## Shaffer *versus* Haish.

1. An employer is only bound to furnish those in his employ with ordinary machinery such as with reasonable care may be used with safety.

2. An employee, who is injured in whole or in part as the result of his own negligence, cannot recover from his employer.

3. A declaration of a superintendant, made after an accident has occurred, that "if the machine had been in proper condition the accident would not have happened," is incompetent to affect any one but himself, and is not admissible in an action against the employer.

October 15th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Cambria county*: Of October and November Term 1885, No. 163.

Case, by Samuel Shaffer against J. Haish & Co. to recover damages for injuries received while in the employ of defendants, alleged to have been caused by reason of defendants' failure and neglect to supply him with a safe machine.

The material facts of the case, showing how the accident

[Shaffer *v.* Haish.]

happened and the condition of the machine, are fully set out in the opinion of Mr. Justice PAXSON, *infra.*

Shortly after the injury, and whilst the plaintiff was severely suffering, he said to Riale, defendant's superintendent: "Maybe I was to blame a little that I was hurt," or, "perhaps I was to blame a little I was hurt." "No," says Riale, "it was no fault of yours at all; it was the fault of that machine not being right. If it had been as it ought to have been, you would not have been hurt."

The court, DEAN, P. J., of the twenty-fourth judicial district, instructed the jury to find for the defendants, saying, *inter alia:* "Plaintiff is bound to prove affirmatively that his injuries resulted from negligence of defendants, not from accident in his employment, nor from want of care on his part in performing the duties assumed by him, and which contributed directly to occasion the accident. He has failed to adduce the necessary proof, and your verdict must be for the defendants."

Verdict for the defendants and judgment thereon. Plaintiff then took this writ of error, assigning for error the action of the court.

*A. H. Coffroth* and *John P. Linton,* for plaintiff in error.—A master is held liable when the defects in the machinery about which the servant is employed are obvious, but the danger is not apparent, because the master should have taken steps to ascertain whether the defects rendered the machinery unsafe: Wood's Master & Servant, § 336; Railroad *v.* Lempe, 11 Am. and Eng. R. R. Cases, 201; Patterson *v.* R. R. Co., 26 P. F. S., 389.

Where the principal selects a superintendent to manage the concern, there the superintendent or middleman represents the principal, and his negligence in this respect is the negligence of the principal: Wharton's Law of Negligence, Sec. 222; Grizzle *v.* Frost, 3 Foster & Finlason, 622; Ashworth *v.* Stanwix, 3 El. & El., 701; Clarke *v.* Holmes, 7 Hurlst. & N., 937; Mullan *v.* Philadelphia & Southern Mail Steamship Co., 28 P. F. S., 32.

The law is well settled that what is and what is not negligence in a particular case is generally a question for the jury. It is always a question for the jury when the measure of duty is ordinary and reasonable care:" West Chester and Phila. R. R. Co. *v.* McElwee, 67 P. St. R., 315; McKee *v.* Bidwell, 74 Id., 223; Mullan *v.* Phila. & Southern Mail Steamship Co., 78 Id., 32; Phila. Wil. & Balto. R. R. Co. *v.* Stinger, 78 Id., 226; North Penna. R. R. Co. *v.* Kirk, 90 Id., 20; M'Cully *v.* Clarke & Thaw, 4 Wright, 399; Baker *v.* Fehr, 97 P. St. R.,

[Shaffer v. Haish.]

72; Pass. Railway Co. v. Boudrou, 92 Id., 481; Am. Steamship Co. v. Landreth, 12 Out., 264; Schum v. Penna. R. R. Co. 11 Out., 8.

*W. Horace Rose*, for defendants in error.—A servant or employee takes the risk of his employment so far as danger ordinarily flows therefrom : Wharton on Negligence, secs. 207, 199, 205, 214, 244; Green & Coates Street Passenger Railway Co. v. Bresmer, 97 Pa. St. 103; Pittsburgh & Connellsville Railroad Co. v. Sentmeyer, 92 Id., 276; Sykes v. Packer, 3 Out., 465; Northern Central Railway Co. v. Husson, 5 Out., 1.

An employer is not bound to furnish his employees with the safest machinery: Wharton on Negligence, sec. 213; Mansfield Coal & Coke Co. v. McEnery, 8 Weekly Notes of Cases, 81; Payne v. Reese, 4 Out., 301.

It is the duty of the plaintiff in an action brought to recover for an injury done in the course of his employment to show a case clear of contributory negligence (the injury resulting exclusively from the wrong of the defendant) before the defendant can be called upon to answer: Wharton on Negligence, sec. 428; Waters v. Wing, 59 Pa. St. 211; City of Lancaster v. Kissinger, 11 W. N. C., 151.

The test for contributory negligence is: Did the plaintiff's act contribute in any degree to producing the injury? If so, he cannot recover: Creed v. Pennsylvania Railroad Co., 86 Pa. St. 145; Passenger Railway Co. v. Boudrou, 92 Id., 480.

When the evidence of the plaintiff fails to show that his injury was due to the negligence of the defendant, the injury being caused in the handling of a rapidly-revolving machine, and the same evidence establishing the fact that had he been cautious no accident could have happened, it is the duty of the court to take the case from the jury. In such case, the question of negligence is for the court, and the case should not be submitted to the jury. When the evidence is insufficient to warrant a finding of negligence on the one hand, or clearly establishes contributory negligence on the other, it is the duty of the court to order a nonsuit, or refuse to submit the question : Catawissa Railroad Co. v. Armstrong, 52 Pa. St., 282; Philadelphia, Wilmington & Baltimore Railroad Co. v. Stinger, 78 Id., 219; Passenger Railway Co. v. Boudrou, 92 Id., 481; Hoag v. Lake Shore & Michigan Southern Railroad Co., 85 Id., 293.

Mr. Justice PAXSON delivered the opinion of the court, November 2d, 1885.

The defendants are manufacturers of barbed steel wire. Their works are located at Johnstown, in this state, and the

plaintiff was in their employ. While so engaged he was seriously and permanently injured by a machine he was operating, and this action was brought against his employers. to recover damages for such injury. The ground upon which he seeks to recover is that they were negligent in this, that they did not furnish him with a safe machine. The learned judge below was of opinion that the charge of negligence had not been made out, and gave the jury a binding instruction to find for the defendants. This is the principal matter of complaint.

It was the duty of the defendants to furnish those in their employ with ordinary machinery, such as with reasonable care may be used with safety. This was the precise measure of their duty ; nothing more ; nothing less. They are not bound to insure against accidents. So long as leather will stretch and iron will break, accidents will occur. Nor are they to be held liable where an employee is injured in whole or in part as the result of his own negligence.

These principles, thus briefly stated, cover this case. It remains but to apply them to the facts as they were developed upon the trial below.

The plaintiff at the time of the injury was operating one of the machines, all of which were alike so far as the testimony shows. It was run by a cross-belt as were several of the others. When it was needed to stop the machine a lever was used to throw the belt off the driving pulley to a loose pulley. When once so thrown off and the lever held until the belt had properly adjusted itself overhead to the pulley which supplied the power, the machine could not start until the belt was thrown back again upon the driving pulley. Upon the occasion referred. to the plaintiff had stopped his machine and while engaged in removing the spool of wire the machine started and he was caught in the cogs and injured as before described.

Was the machine defective in its original construction, or had it become so by reason of use or other cause?

There was certainly no evidence as to the first proposition. It was claimed, however, that the machine was defective and unsafe at the time the injury occurred. The learned counsel for the plaintiff have collected in their printed argument upon page 19 of their paper book, the testimony upon which they rely and which they urge should have been submitted to the jury. I quote from the paper book :

" Thomas Reese (page 10) says the machine did not seem to work properly. On cross examination (page 12) he says : I thought it run a little too fast, and I did not like to work on that machine the way it run." The witness upon his cross examination further said, in reply to the question "Well, what was the matter with the machine ? Well, what was wrong

[Shaffer v. Haish.]

with it when I was there as far as my knowledge runs was she did not work right; didn't barb right; didn't give satisfaction." The witness also said the defect he referred to had nothing to do with the stopping or starting of the machine. It was not even alleged that the failure of the machine to barb the wire properly, had any connection with the accident. This testimony does not touch the case.

The next witness relied upon by plaintiff is Benjamin Tutton. I quote again from page 19: "Benjamin Tutton (page 13) says: I stopped running the machine; it was not in fit condition to work at that time. I told Riale and Bradtz it was not safe, and that I would not bother with it. We called it the 'hospital machine.'" The learned counsel have not cited, what in my view is the strongest part of the testimony of this witness. I will supply the omission: Q. "Now just state why it was unsafe? A. Well, the machine would start of its own accord after it was stopped. When I was working it the belt was not properly fit up." Just what the witness intended by the remark that "the belt was not properly fit up" does not clearly appear. His subsequent cross-examination throws some light upon it. I give a portion of it. "Q. Then five (machines) were run with straight belts and five with crossed belts? A. Yes sir. Q. Was there any liability to start without your starting them? A. There was if the pulleys were too loose: sometimes if you would shove it off too quick it would twist, and if you did not watch it carefully it would fly right back on the fast pulley again. Q. If you didn't push it over far enough and hold it there for a little bit until the belt had adjusted itself on the pulley above, it was liable to fly over on the fast pulley and start the machine? A. Yes sir, it would do that; some machines would do that. Q. Was there any more liability for one machine to start than there was for another, if it was handled properly? A. No sir: Q. In any one of those machines if they were handled with prudence there was no danger of any one meeting with an accident? A. No sir."

There is not a word here to show that the machine was out of order. If it was handled with prudence there was no danger. If the belt was not properly thrown off and held off a sufficient time, it would fly back and start the machine. This appears to have been the case with all the machines, especially those run with cross-belts. If the belt had become too loose whose business was it to know that fact? All leather belts will stretch with use and the person operating the machine is of all others the one to know that fact and to remedy the defect or call upon his employers to do so.

The next witness was George Soupper. I quote again from

page 19. " George Soupper (page 16) says it would work
sometimes, and sometimes it would not work; it was not as
regular as the other machines; it was run by a crossed belt;
if it was not handled with a good deal of care it would throw
it in a twist, and if he would shove it over too quick it would
fly back on the tight pulley again and start the machine."
The witness is not speaking of any defect in the machine or
its construction.  He is referring to the mode of handling it.
This is clear from his cross-examination a small portion of
which I give: Q. " Then to give it a sudden jerk in letting
your lever go, of course the tendency of the belt would then
be to go right back again?  A. Yes, it would, if you would
throw it over rapidly it would take it right over on the tight
pulley again.  Q. That is what caused the starting, is it
not?  A. Yes, sir.  Q. Then it would not have started
if it were properly adjusted?  A. No, sir.  Q. Then it
was just like any other machine that was operated in that
building in regard to starting and stopping?  The belt had to
be adjusted on the loose pulley before you would let go of
your lever?  A. Yes, sir."

I quote again from the argument: " L. Ross, (page 19) says
there was a wire attachment to tighten the lever, and in his
opinion it was there to fasten the lever back so it would not
start."  We are not informed by testimony or otherwise that
this wire attachment was out of order or that it rendered the
machine unsafe.  So far as we can form an opinion it would
seem to have been placed there from motives of safety.  It
has not been shown to have contributed to the accident.

I quote again from the argument: " The plaintiff testifies
that he was careful and had stopped the machine, and waited
some time before he reached to remove the spool of barbed
wire.  The defendants alleged that the plaintiff put his foot
upon the platform on which the machine stood.  This the
plaintiff denied and showed the jury in what manner he had
placed his foot."

The only portion of this paragraph that needs comment is
that portion which refers to the plaintiff's testimony.  He does
state that he was careful and had stopped the machine.  I have
no doubt the plaintiff thought he was careful and had stopped
the machine long enough for the belt to adjust itself.  That
he was mistaken is shown not by the result merely, but by the
testimony of his own witnesses, which I have cited above.

This was all of the evidence relied upon by the plaintiff as
entitling him to go to the jury, excepting the declarations of
Riale, the superintendent, made after the accident.  We are
not disposed to rule this case upon them.  His declarations
were clearly incompetent to affect anyone but himself, and if

objected to must have been ruled out.  Besides, they are fairly offset by the plaintiff's own declaration made at the same time that, "Perhaps it was a little carelessness on my part."

It is possible that a jury would find the negligence were the case submitted to them.  This is the greater reason why we should not direct the submission in the absence of sufficient evidence.  The plaintiff has met with a serious calamity which enlists our warmest sympathies, but we would be doing a wrong were we to place the burden of making compensation for that calamity upon shoulders that are not entitled to bear it.

Judgment affirmed.