## CHARLES AUGERSTEIN v. JONES ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued November 8, 1890—Decided January 5, 1891.
[To be reported.]

139    183
157    246
139    183
177     65
139    183
197    260
139        183
19 SC ²469

1. In an action to recover damages for injuries received by an employee by means of the breaking of machinery supplied him to work with, the fact that the accident occurred and that it was possible to prevent it, is not the legal test of liability for negligence on the part of the employer.
2. The rule of duty on the part of the employer is, not that he must provide machinery such as will either insure the employee against injury or be of the very best and newest device obtainable, but such as is ordinarily in use and reasonably safe for the work to be done.
3. Where an employee was injured by the bursting of an emery wheel operated by him, not shown to be defective or constructed out of the usual way, it was error to charge that if the accident could have been prevented by the adoption of a device which was not adopted, the employer was guilty of negligence.
4. Where specifications of error do not set out the testimony alleged to have been erroneously admitted or excluded, or, where the record presented does not show that exceptions were taken and sealed to the admission or refusal of the offers, they cannot be sustained on appeal.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No 149 October Term 1890, Sup. Ct.; court below, No. 382 June Term 1889, C. P. No. 1.

On April 26, 1890, a summons was served in trespass brought by Charles Augerstein against Jones & Laughlin, Limited, to recover damages for personal injuries averred to have been caused by the negligence of defendants. Issue.

At the trial on April 15, 1890, it was shown that on December 21, 1888, Charles Augerstein, the plaintiff, a locksmith from Germany, was employed by the defendants and put at once to the work of grinding metal castings on an emery wheel. The wheel was about two feet in diameter, hung on a horizontal shaft, and geared to run ordinarily from 800 to 1000 revolutions per minute. About the wheel were four upright

iron posts, fitting at their tops into four holes, in the underside of an iron plate about two feet by eighteen inches in size and an inch thick. The plate merely rested upon the posts, which passed up partly through the holes. Through the top of the plate was an opening in which ran the upper edge of the wheel, the surface of the wheel being kept nearly even with the upper surface of the plate. The grinding was done by holding the article ground firmly upon the plate and upon the wheel. The wheel was nearly new, and had been in use for about two months. On December 24th, it burst into two pieces, one of which flying upwards struck the plate and threw it into the plaintiff's face, as he was bent over it, breaking his jaw. The negligence of the defendants complained of was the failure to fasten the plate securely upon the upright posts.

John Huber, called by the plaintiff, testified that he had worked at the defendant's mill for several years before the accident; knew the wheel and described its construction; had worked at it himself, and described the manner in which the injury occurred. On cross-examination, he was asked:

Q. From your knowledge of machinery and emery wheels, can you say whether you regard this as a safe machine, so that it could be used by a prudent man with safety to himself?

Objected to, that it is asking the witness's opinion as an expert.

By the court: Objection sustained.[1] *

Q. Was it a safe machine the last time you used it before this accident? A. Well, I couldn't see nothing dangerous in it. Q. Was it at that time such a machine as could have been used by a prudent man without danger to himself?

Objected to.

By the court: Objection sustained.[2] *

John Lang, called for the plaintiff, was asked on direct examination:

Q. Then, if there had been bolts up through and nuts on top, could that have happened?

Objected to.

By the court: Objection overruled.[3] *

Defendants' counsel moved that the testimony of the said John Lang be stricken out, as incompetent and irrelevant, the witness having testified that he knew nothing whatever about this machine within six months of the accident.

Arguments.

By the court: Motion overruled; exception.[4]

Dr. C. P. Leip, called for the plaintiff, was asked on direct examination:

Q. If you had had that patient at his own home, or some other place, and treated him as you did, what would your services be worth?

Objected to.

By the court: Objection overruled.[5] *

Q. And, aside from the hospital boarding and nursing, what would the surgical and medical services, rendered to him, be worth to a patient outside the hospital?

Objected to.

By the court: Objection overruled.[5] *

At the close of the testimony, the court, COLLIER, J., charged the jury as shown in the opinion of the Supreme Court, and answered a point presented for instruction as follows:

The court is requested by the defendants to charge:

2. Under all the evidence in this case, the verdict must be for the defendants.

Answer: Refused.[6]

—The jury returned a verdict for the plaintiff for $1,000. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, assigning for error:

1, 2. The refusal of the defendants' offers.[1] [2]

3. The admission of the plaintiff's offer.[3] †

4. The refusal of the defendants' motion.[4] †

5. The admission of the plaintiff's offers.[5] [5]

6. The refusal of the defendants' point.[6]

*Mr. John D. McKennan*, for the appellants:

A man of the most ordinary intelligence and observation could have discovered at a glance that, if the emery wheel should burst, the plate over it might be thrown up and cause him injury, whether it was secured by bolts or not. Having

---

* The notes of testimony, printed in the appendix, did not show, after either of the above offers marked *, that an exception was taken or bill sealed to the admission or refusal of the offer.

† The assignments of error did not set out the testimony admitted under the offers objected to, nor the testimony which the defendants moved to strike out.

assumed this plain but remote risk, the plaintiff was not entitled to recover damages for the injury which happened to him: Patterson v. Railroad Co., 76 Pa. 389. Moreover, to entitle the plaintiff to recover damages in a suit of this sort, it must be shown that the machine was in fact defective, that the injury was occasioned by such defect, and that the defendant had notice of it, or would have had notice of the defect if he had exercised ordinary care: Wood's Master & S., 751, 770.

*Mr. A. M. Watson* (with him *Mr. James H. Porte*), for the appellee:

The general rule that the employer is bound to provide and keep ordinarily safe appliances and machinery, and must not expose his employees to dangers that, in good conscience, he could and ought to provide against, applies to this case, and the evidence sustains the verdict: Pittsburgh etc. R. Co. v. Sentmeyer, 92 Pa. 280 ; McKee v. Bidwell, 74 Pa. 218.

OPINION, MR. JUSTICE GREEN :

The plaintiff, being in the employment of the defendants in the service of grinding boxes on an emery wheel, was injured by the bursting of the wheel, and brought this action to recover damages for the injury. The negligence charged against the defendants as the cause of the injury, in the plaintiff's statement, was: " That said emery wheel was placed in a plate or rest, which said plate or rest was unsafe, insecure, and dangerous to be used when said emery wheel was in motion, of which the defendants then and there had full knowledge, and of which the plaintiff had no knowledge ; that it was the duty of the said defendants to guard, fasten, secure, and protect such plate or rest, so containing said emery wheel as aforesaid, so that the plaintiff might work thereat without danger to life or limb ; " and that while the plaintiff was at work grinding boxes on the wheel it broke, and the plate or rest was thrown against the plaintiff's head, and injured him.

The learned court below put the case to the jury in this manner: " You will observe that the negligence charged here is that this iron plate was insecure and unsafe, and that when the wheel burst it was not sufficiently secure to protect him ;

Opinion of the Court.

that, if it had been sufficiently secured and fastened, he would not have been injured. That is the question you are to try. We do not try whether the machinery was properly oiled, or whether it wabbled, or how the wheel broke ; because it is alleged that if this plate had been fastened with screws at the top, as they allege it is now, this man would not have been hurt. That is the allegation. Bear that in mind, because that is what we are to try." The court then proceeded to say that, to determine the defendants' liability, the jury must find some neglect of duty in regard to the plate; that the defendants must furnish reasonably safe appliances for their employees, and, if they were told that the plaintiff was an unskilled man, they must inform him of anything dangerous. The court further said : " Now, what was the duty of the defendants in this case ? Emery wheels will burst; a grindstone of any kind will burst. Everybody knows that, and it is not necessary to give proof that it may burst. But the mere bursting of a grindstone, unless there is some defect in it of which the proprietors were informed, will not enable a person to recover damages from the proprietors. If that were the law, we might as well shut up our works and go to something else. But, if the accident happened by reason of any neglect on the part of the proprietors, they would be liable. In this case, if they knew that putting these bolts through, and screwing them on top of the plate, in case it did burst, would protect a man, then they were bound to do that, and that is one of the questions for you. Now, how is that? Here was a plate. If it had been secured on top with screws through it, as was done since, would that have protected this man when the stone burst? If it would, and they knew, or had reason to know, that that would be a protection, then the defendants were bound to do that much. . . . . So, the question here is simply this : Was it negligence on the part of the defendants not to have put these uprights through, and to have screwed them on top of the plates, and, if they had done that, would that have prevented this injury? If you find that to be the case, then that would be negligence on the part of the defendants, and the plaintiff would be entitled to recover." The substantial meaning of this is, that, if the accident could have been prevented by screwing down the plate, the defendants were neg-

ligent in not doing so, and the plaintiff could recover. This method of treatment makes the fact of the accident and its possible prevention the test of the negligence of the defendant which produces legal liability. It has been so many times decided, and by so many courts of last resort, that this is not the legal test of liability for negligence, especially where the plaintiff is an employee, and the action is against his employer, that it seems a work of supererogation to cite the authorities.

This court has with frequency expressed the rule of liability in this class of cases. Thus, in Payne v. Reese, 100 Pa. on page 306, we said, GORDON, J.: "An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation, in order to save himself from responsibility for accidents resulting from its use. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without danger to the employee, it is all that can be required from the employer: This is the limit of his responsibility, and the sum total of his duty." The same rule was asserted and applied in Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276. In North. Cent. Ry. Co. v. Husson, 101 Pa. on page .7, we said: " We cannot agree that the risk to which an employer subjects his employee suffices to impose liability upon the former, as being extraordinary in character, merely because the injury in a particular case might possibly have been prevented by some different device. Almost all accidents could be avoided, if the especial manner of their occurrence could be foreseen. . . . . If the risk is an ordinary one, the employer is not liable, even if the employee did use ordinary care. In all such cases, the risk of injury is one of the hazards which the employee assumes when he engages in the service to which it is incident."

In the case of Baker v. Railroad Co., 95 Pa. 211, SHARSWOOD, C. J., in delivering the opinion of the court, said : " A servant assumes all the ordinary risks of his employment. He cannot hold the master responsible for an injury which cannot be traced directly to his negligence. . . . . The duty which the master owes to his servants is to provide them with safe tools and machinery, where that is necessary. When he does this, he does not, however, engage that they will always continue in the same condition. Any defect which may become

apparent in their use it is the duty of the servant to observe and report to his employer. The servant has the means of discovering any such defect, which the master does not possess. It is not negligence in the master if the tool or machine breaks, whether from an internal original fault, not apparent when the tool or machine was at first provided, or from an external apparent one, produced by time and use, not brought to the master's knowledge. These are the ordinary risks of the employment which the servant takes upon himself." In Phila. etc. R. Co. v. Keenan, 103 Pa. 124, we held that a master is bound to exercise reasonable care to adopt and maintain suitable instruments and means to carry on the business in which his servants are employed, but is not required to furnish the newest or best form of instruments. In Shaffer v. Haish, 110 Pa. 575, the present Chief Justice said: "It was the duty of the defendants to furnish those in their employ with ordinary machinery, such as with reasonable care may be used with safety. This was the precise measure of their duty; nothing more, nothing less. They are not bound to insure against accidents. So long as leather will stretch and iron will break, accidents will occur."

In Allison Mfg. Co. v. McCormick, 118 Pa. 519, we held that, to be relieved from liability for injuries received by a servant from the use of defective materials, the master is not required to supply the best materials known, or to subject such as he does supply to an analysis to determine what hazard may be incurred in their use. For injuries thus suffered by a servant, when engaged in a work and in a place not in any sense dangerous, the materials being those for a long time in common use for the purpose to which they were applied, and the work done under the direction of a competent superior, the master is not liable. In Phila. etc. R. Co. v. Hughes, 119 Pa. 301, our Brother CLARK said: "It was the duty of the company to exercise ordinary care in adopting, providing, and maintaining safe cars, with suitable appliances and machinery with which the plaintiff might transact the business of the company within the line of his duty; not the very best machinery which could be procured, or that which combined the latest device or improvement as a precaution against danger, but such as was reasonably safe and in common use. . . . . The

Opinion of the Court.

company does not insure the life of its employees : the servant assumes, as we have said, the ordinary risks of his employment ; and, if any defect in the tools or machinery placed in his hands becomes apparent in their use, it is the duty of the servant to observe and report to his employer, for the servant has means of discovering defects which the master may not possess." The same rule is repeated in Rummell v. Dilworth, 111 Pa. 343.

We have thus seen that the rule of duty on the part of the defendants was to provide ordinary machinery, such as was reasonably safe for the work to be done, and not to provide such as would either insure the plaintiff against injury, or be of the very best and newest device attainable. If this was done, the defendants are not liable, although the plaintiff was injured without fault on his part. Instead of this rule being given to the jury, with an instruction to find whether the wheel was set in its frame in the ordinary and usual way so as to be reasonably safe, the jury was told that if the accident could have been prevented by screwing down a heavy iron plate over the wheel so as to avoid injury to the plaintiff, and this was not done, and the injury resulted from that cause, the plaintiff would be entitled to recover. That this was error is too plain for argument. Practically, it would require that employers should provide such machinery as would suffice to insure their employees against accidents.

If we recur to the facts, about which there is but little dispute, we find that the wheel was set in a frame, surrounded by four iron standards, upon which was placed a heavy iron plate, with a hole at each corner, half way through the plate, into which the standards were fitted, and with an oblong hole in the center, through which the wheel projected very slightly, so that the boxes could be rested on the plate, and applied to the wheel to be ground. The plate was two and a half feet long, eighteen inches wide and one inch thick. Its weight was not given, but it was testified to be very heavy. There was a method of lowering the plate by means of nuts or pins below the plate, so that the surface of the plate could be accommodated to the wheel as it gradually wore down, but there were no nuts or pins above the plate to fasten it down. The accident happened by the sudden bursting of the wheel while the plaintiff

was at work over it, the plate being lifted up so that it struck the plaintiff on the under jaw and broke it. There. was no proof that the emery wheel had any defect in .its structure. It was a new one, that had been put in place about two or three months before the accident. It was testified that emery wheels sometimes burst, though not frequently. Two witnesses who had worked about nine years in this shop, and knew this machine, did not mention any accident of this kind as having occurred in that time, although there were three emery wheels in use there. One witness, Huber, who had worked there six years, testified that he had never heard of the bursting of a wheel while he was there. The bursting of this wheel was therefore a very exceptional occurrence, and it became a matter of the highest importance to the plaintiff's case to prove that the structure of the machine was in some manner defective, in order to bring home a charge of culpable negligence to the defendants. The vital question was whether this machine was built or set up in the usual and ordinary manner in which machines of that kind were built; and, if not, then in what respect, if any, was it defectively built, and did such defect of structure cause the injury to the plaintiff?

The writer has read over the testimony twice, patiently and carefully, and he is obliged to say that there is not a scrap of testimony on this subject. Not a witness was asked a single question as to what was the usual and ordinary way of constructing such machines, or whether this one was built in any respect differently from other machines of this kind. There is absolutely no information on that subject to be found anywhere on this record, and yet it is of the very essence of the plaintiff's case. Judged by the test of experience, the inference is that it was adequately built, as no accident had occurred on it during nine years of constant use. Where, then, is the evidence, any evidence, of negligence in the structure of the machine? There is none. The plaintiff endeavored to make out his case by proving that, if the plate had been bolted down fast, the accident might not have happened; but even this attempt was not successful, as most of his witnesses refused to say that the plate would have remained fast if the wheel had broken. But that kind of proof, even if made, is not the test of liability. It only tends to prove that the particular accident

might have been prevented if the particular precaution had been taken; and that goes for nothing, in considering the question of legal liability in a charge of negligence. For aught that appears upon this record, this machine was built in precise accord with the usual and customary mode of building such machines. There is no proof that an omission to fasten the plate down with screws and bolts was any departure from the ordinary mode of building such machines, and therefore there was no evidence to support an allegation of negligence in the structure of the machine. There was a little testimony to the effect that the wheel sometimes wabbled in its movement, though both the plaintiff and some other of his witnesses who worked at it testified they did not notice it; but, even if this were true, it was a defect of which it was the duty of the workmen who could see it to notify the defendants, before any liability could attach on that ground. Upon the whole case we are quite clear that the court was in error in presenting to the jury an erroneous rule or test of liability, and also in submitting a question of fact in support of which there was no sufficient testimony before them.

We think the witness Huber had sufficient expert knowledge to justify the admission of the testimony rejected under the first and second assignments, but we find no exception in the printed record to the rulings of the court, and therefore these assignments cannot be sustained. The third and fourth assignments are in violation of the rule of court, in not setting out the testimony in question, and must be dismissed. The fifth assignment is without merit. But the sixth assignment is sustained, and on that the judgment is reversed.

Judgment reversed.