## DANIEL KEHLER v. WILLIAM SCHWENK.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF NORTHUMBERLAND COUNTY.

Argued May 26, 1891—Decided October 5, 1891.

1. The test of liability of an employer to an employee, for injury received in the course of the employment, is not danger, but negligence. As to machinery and appliances, the employer is bound to furnish such only as are of the character ordinarily used and of reasonable safety, and the former is the conclusive test of the latter.

2. Where, in an action for negligence by an employee, for injuries received in unhitching a dump-car, the evidence shows clearly that there were several methods of hitching in common use, the choice between them being a matter of judgment depending on surrounding conditions, the owner had the absolute right to select according to his own judgment.

3. In such an action, an instruction to the jury, "You would not be willing to lose your arm for the world, or for the wealth of a Vanderbilt," though followed by the caution that it "would be no test of value," is an undesirable form of presenting the question of damages to the jury, prone enough without it to measure verdicts by sympathy.

4. The measure of a boy's responsibility for contributory negligence is his capacity to see and appreciate danger; and the rule is that, in the absence of clear evidence of the lack of it, he will be held to such measure of discretion as is usual in those of his age and experience, the measure varying of course with each additional year.

5. The increase of responsibility makes no sudden leap at the age of fourteen. That is simply the convenient point at which the law, founded on experience, changes the presumption of capacity, and puts upon the infant the burden of showing his personal want of the intelligence, prudence, foresight, or strength usual in those of that age.

6. In the present case, the plaintiff being between fourteen and fifteen, and the evidence as to whether or not the employment, with the appliances used, was manifestly dangerous and unsuitable for boys of the plaintiff's age being contradictory, it was not error to leave the question of the defendant's negligence to the jury, under proper instructions.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 92 July Term 1890, Sup. Ct.; court below, No. 251 September Term 1883, C. P.

On July 25, 1883, Daniel Kehler, by his father and next
friend, Charles Z. Kehler, brought case for negligence against
William Schwenk, George Robertson and Jacob Geise, trading
as Schwenk, Robertson & Co., to recover damages for injuries
sustained by the legal plaintiff, a minor, while working at the
defendant's colliery. Issue.

On March 24, 1890, the issue was called for trial and the
jury sworn as to William Schwenk, the then surviving partner
of the defendant firm, when the case presented was in substance
as follows : *

In September, 1882, Daniel Kehler, between fourteen and
fifteen years of age, was employed at the Black Diamond col-
liery owned by the defendant firm, as was also his father and a
brother. There was testimony to the effect that the father had
given directions that his sons should not be employed at more
dangerous work than slate picking; that on September 12th,
Mr. Robertson, one of the defendant firm, directed the breaker-
boss, Edward Smith, to send a boy out to assist with the dump-
car; that the breaker-boss ordered the plaintiff out, and the
latter objecting he was told to see Mr. Robertson; that the
plaintiff did not see Mr. Robertson, but proceeded to the work
required, and was so engaged that day and part of the next
day; that such work was commonly performed by boys; that
the car was run to the dump on an ascending grade, and was
drawn by a mule hitched to it by a chain four or five feet long
hooked to the spreader and carried back to a hook under the
bottom of the car; that to obtain a momentum which would
carry the car to the dump, after the removal of the mule, it
was necessary that the mule be driven rapidly and detached
from the car some distance from the dump; that to detach the
mule was the work of the plaintiff, and the only way he could
do it, as was claimed, was to step in front of the moving car
and detach the chain, when the mule would step aside out of
the way of 'the car; that there were several methods of hitch-
ing to the car in use at different collieries,—one, the side-hitch,
to a hook at the side of the car; another, the centre-hitch, to a
hook in the front of the car, and witnesses testified that the
method employed by the defendant firm in this instance was

* See Schwenk v. Kehler, 122 Pa. 67, a suit by the father in his own
right for the same cause of action.

much more dangerous than the methods mentioned; and it was shown that on September 13th, the plaintiff, while in the act of detaching the chain, was caught and thrown to the ground, the car passing over him and so mangling his arm that it was necessary to amputate it below the shoulder. The plaintiff's father admitted that he knew on September 12th that Daniel was employed on the dump, and was informed of it on the 13th, but he testified he did not meet with any of the defendant firm to remonstrate about it.

At the close of the testimony, the court, GREEN, J., 21st district, specially presiding, charged the jury in part as follows:

The jury understand, that so far as the employment of a man by another is concerned, he is bound to accept the risks that are natural to that employment; as for instance, a man is engaged to work upon a farm; whatever danger there may be with the work naturally on a farm, if he is injured in doing that work, without any fault of the employer, he could not hold the employer for any injury. The same way is the miner going into the mine, and you can see that there would be a great deal more danger in a mine than on a farm. I suppose there are a thousand accidents happen in mines where there is one on a farm, yet the employer in the mine is not any more liable for injuries to men in mines than he would be on a farm, because most injuries connected with mines are caused by accidents natural to the employment. A man may be killed by means of fire damp, or black damp, or water, or the crushing in of the mine. These are all accidents that happen to the men arising out of their employment; and therefore, the law says, so far as such injuries are concerned, if an employee becomes injured he cannot look to his employer for the purpose of making him pay for the injury he has suffered. But the law fixes the liability or the duty of the employer, by requiring him to furnish the employee with such suitable appliances and tools, to be used for the purpose of carrying out the duties of the employee, in such a way so that it can be done without unnecessary exposure to danger. Now, the allegation in this case is that the defendants did not make use of suitable material, suitable appliances, in connection with this colliery, in connection with these dirt dumpers, and therefore, that they exposed their men unnecessarily

to risks. That becomes the first question to be disposed of by you in this case.

[There is another element to be considered in connection with the duties of employers, and that is, that the appliances to be used are also to be governed to some extent by the character of the persons whom they employ for the purpose of doing the work. As for instance, they might employ certain appliances which they might put in a man's hands, and which would be proper for a man to handle; whereas, if they put the same kind of appliances in the hands of a boy fourteen years of age, who would be unskilful, or would be weak, not having the strength to perform the labor that might be required of him, that would expose him to much greater danger than in the case of a man of mature years, and therefore, the law makes relatively the same application of the rule in the one case as in the other; that is to say, if boys are employed, then the materials or appliances that ought to be furnished for their use are to be furnished with reference to their age, to enable them to do their duties safely. These, of course, are fixed principles of law, which the jury are to take into consideration in determining the question as to whether the defendants were negligent in furnishing the cars and the harness and fastenings that are complained of in this case as being the cause of the accident. This is, as I have said before, the first question for you to dispose of under the evidence in the case. The only question, perhaps, to dispose of is as to the appliances that were made use of there. Were they such as were ordinarily in use at other places of the same character, and made use of by boys of the same age? These are matters for you to take into consideration.] [1]

Then another matter for you is as to the different kinds of appliances that have been referred to by the witnesses on both sides. [You have for instance in evidence, that there are three kinds of methods by which these dirt dumpers are taken out to the end of the dump, for the purpose of having the dirt carried out to the end of the bank. They have a chain attached to the frame of the dumper, as in this case, and then there is what is called the " centre-hitch " fastened to the body of the dumper, and another method is what was called the " side-hitch." The proper question for you to determine is as to which of these

Charge of Court below.

hitches was the proper hitch for these parties to make use of at this colliery, and it is also for you to determine whether, in making use of the proper hitch at this colliery, it would have been a safe thing for them to employ boys of the age of fourteen or fifteen years, or sixteen, for the purpose of driving this dumper and attending to this work.    That is a question of fact for you to dispose of under the evidence in this case.] [9]. . . . .

We do not propose, as I have said before, to go over the facts of this case with regard to this machine.   It is a question of fact for you to determine under the evidence in the case. One natural question, perhaps, to consider, is the fact as to whether this car could be operated, or worked, and the chain be unfastened without the necessity of the boy getting in between the tracks.    According to the evidence in this case, the danger was the getting between the tracks and of the car running over the boy ; and that is what happened in this case. Therefore, one of the main questions to be determined is, whether, in the furnishing of a car of this kind, the natural method of the operation of this car was for them to unfasten the apparatus, or unhook it, in that way.   As to that, you have the testimony of quite a number of witnesses on the part of the plaintiff, and the testimony of the plaintiff himself, who swears that it was not possible for him to unhook this car except by getting between the tracks, and the testimony of other witnesses who were working on the dirt bank ; and our recollection is, that all these witnesses on the part of the plaintiff, who were working on the dirt bank, testified that it was impossible for the boys to unhook this chain from the mule without getting between the tracks.   The defendant swears that it was not necessary to get between the tracks in order to unfasten the mule ; that the chain was long enough for the boy to turn the mule outside the tracks in order to unhook it, and that was the purpose of making the chain so long.

You have here in evidence the chain, and can readily see how long it is, and whether it is capable of accomplishing the purpose.   In connection with that, you have the testimony of other witnesses, one of whom was Andrew Robertson, who says, that getting between the tracks would be a dangerous operation; and as we recollect his testimony, he thought it would be best to unhook the chain without getting between the

tracks. You have the testimony of other witnesses on the part of the defendant, which it is not necessary for us to re-capitulate, but with regard to this testimony on the part of the defendant, we do not recollect of any witness testifying with regard to the chain, who was actually employed on the dirt bank in unhooking the chain. These are matters for you to take into consideration, for the purpose of determining the question as to whether the defendants did make use of the usual appliances for the purpose of doing work of this kind, and whether those appliances were reasonably safe so as not to expose the workmen to unnecessary danger. It is a matter of fact which we propose to submit to you. If you find that the defendants have done all that the law requires them to do in the furnishing of these tools, and they were reasonably safe, then the verdict ought to be in favor of the defendant. The defendant would have done all that the law required him to do, and therefore there could be no claim of negligence as against him. . . . . .

Now the question, of course, arises upon the allegation of contributory negligence, as to what extent the plaintiff is to be held liable for contributory negligence. [The law presumes, as he was beyond the age of fourteen, that he would be naturally sensible of the ordinary dangers and ordinary risks that he would run; the law presumes that, in the absence of proof to the contrary; and, if he knew the danger that he was incurring by going between the tracks, and still voluntarily went between the tracks, that would be a risk he would assume. The fact of his being over fourteen years of age puts upon him the pre-sumption that he is aware of what he is about, and that he is to be held responsible for his own acts of negligence. He is not to be held to the same degree as if he was a man of mature years. You would not expect of a boy fourteen years of age, brought in from a farming country, that he would be as fully aware of the dangers of such employment as a man who had had experience there, and who could foresee the extent and nature of the danger and of the risks that were run. But, as far as this is concerned, it becomes a question of fact for you to determine under the evidence in this case, whether he was capable of seeing ordinary dangers.][2] It is a question for you to determine, under the evidence in this case, whether he was

Charge of Court below.

negligent or not, or whether he was needlessly running unnecessary risk by going between the tracks for the purpose of unhooking this chain. It becomes a question of fact, under all the evidence in this case, as to what extent he is to be held liable, or to what extent he is to be absolved from his responsibility for the acts he may commit, and how far he should have foreseen the danger he was incurring. It is a question for you to decide under the evidence; because, as I have said, if he were guilty of contributory negligence, then he would not be able to recover in this suit for any damage he may have sustained. . . . .

It is not necessary that the court should comment at any greater length upon the facts in this case, because it is scarcely necessary for us to repeat what we have already several times said, that there are but two real questions in this case so far as the law is concerned, and that is the negligence of the defendants; if you should find that they were negligent, then the question would be as to the negligence of the plaintiff. If you find that the defendants were negligent and the plaintiff was not, then the defendant would be liable for damages. [If you should find that the plaintiff would be entitled to a verdict, the question would be, how shall you fix that verdict, what principles should determine you? This is very difficult to determine, because it is difficult to determine what verdict he is entitled to, on account of the pain he has suffered, yet the law requires you to do it if you can. It is difficult to determine what amount the young man ought to be allowed for the future; he might live for a year, or ten years, or fifty years. The general rule with regard to that is to take the average; that is the most likely way to arrive at what it should be. But with all these precautions it still leaves the measure of damages very unsatisfactory. It is always, very largely, a matter resting on the good common sense of the jury. They should not give any extraordinary damages, but they should compensate the boy for the amount of injury he has sustained, taking into consideration the fact of the loss of the arm and its effect on his earning capacity. It is his right arm; and you should take that into consideration, when you determine the question of the amount of damages that should be allowed in order to compensate him as near as possible for the loss he has sustained.

Charge of Court below.

The jury can very readily see that an attempt to determine the value of an arm would be difficult. You would not be willing to lose your arm for the world, or for the wealth of a Vanderbilt; but that would be no test of value, and, as I have said before, it must largely depend on the common sense and reasonable judgment of the jurors themselves. As we have said before, it is impossible to dive into the future for the purpose of seeing to what extent he has been injured so far as the future is concerned.] [8]

The defendant's counsel request the court to charge:

3. The uncontradicted evidence in this case disclosing that the plaintiff was over the age of fourteen years; the absence of clear proof in this case tending to show that the plaintiff was without such discretion and intelligence as is usual with infants of fourteen years of age; the allegations of the plaintiff being that the danger of using the dumper and appliances and performing the particular service, to wit, the unhitching of the mule attached to the dumper, was so obviously great that a person of ordinary prudence would not continue to take the risk, he cannot recover in this case.

Answer: This point we decline and we refer the question to you under our general charge.[3]

4. At fourteen years of age, the law presumes an infant to have sufficient capacity and understanding to be sensible of danger and to have the power to avoid it, and this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age; and there being no such proof in this case, it is established, as a matter of law, that Daniel Kehler, the plaintiff, had arrived at the age when an infant's responsibility for negligence commenced, and the same rule is applied between him and his employer as if he were an adult.

Answer: The law raises the presumption that a boy above the age of fourteen is capable of discerning danger, and may be guilty of contributory negligence for which he will be responsible, and it requires clear proof to relieve him of responsibility; but the law does not hold the boy to the same degree of forethought and care as if he were a man of mature years and experience.[4]

8. That, the undisputed evidence by both plaintiff and de-

Charge of Court below.

fendant showing that the kind of dump car used at defendants' colliery, for many years prior and a long time subsequent to the accident, the plaintiff, when he was employed at the colliery, assumed all the risks incident to the use of this dump car ; and there being no evidence that the car was out of repair, the plaintiff cannot recover in this suit by the mere allegation that the accident might have been avoided if the car had been of different construction, and the verdict should be for the defendant.

Answer : This point we decline to affirm under the broad terms in which it is stated.[5]

9. Daniel Kehler having testified that when he was directed by Edward Smith, in charge of the chutes, to assist on the dirt dump, he, Kehler, informed Smith that the work was too heavy for him, and Smith directed him to see Robertson about it, and Kehler neglected to do so, but went to work without seeing Robertson, who was then about the breaker, and continued to work about the dirt bank until injured, he did so voluntarily and negligently and assumed all the natural and ordinary risks of such employment, and the plaintiff cannot hold the defendants responsible for the injuries sustained.

Answer : This point we affirm, but we cannot say that therefore the plaintiff cannot hold the defendants responsible for the injury sustained.[6]

11. If the jury believe that Edward Smith sent the plaintiff out to work, without orders to do so from any of the defendants, and it was found that the employment was unsuitable and the appliances unsafe, and the plaintiff was injured while performing the services which he was directed to perform by the said Edward Smith, such injury was caused by the act of Edward Smith, a fellow servant, and there can be no recovery.

Answer : This would follow if the facts were as stated. We think that the undisputed evidence shows that the plaintiff was upon the dirt bank in pursuance of orders from the defendants.[7]

—The jury returned a verdict in favor of the plaintiff for $1,800. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal and assigned for error :

1, 2. The portions of the charge embraced in [ ][1][2]

3–7. The answers to the defendant's points.[3 to 7]

8, 9. The portions of the charge embraced in [ ] [8] [9]

*Mr. W. H. M. Oram* and *Mr. S. P. Wolverton* (with them *Mr. W. B. Faust* and *Mr. C. M. Clement*), for the appellant.

That it was not negligence to put the plaintiff at the work in which he was injured, and that he should be held to the same responsibility as any other person, counsel cited: O'Keefe v. Thorn, 24 W. N. 379 (2 Mona. 73); Rickert v. Stephens, 133 Pa. 538; Zurn v. Tetlow, 134 Pa. 213; Beach on Cont. Negl., 360; Nagle v. Railroad Co., 88 Pa. 35; Gillespie v. McGowan, 100 Pa. 149; West Phila. Ry. Co. v. Gallagher, 108 Pa. 527; Colgan v. Railway Co., 4 W. N. 401. That it was not for the jury to determine which of the three kinds of hitches the defendant firm should have used: Faber v. Manuf. Co., 126 Pa. 389; Titus v. Railroad Co., 136 Pa. 625; Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276; Allison Co. v. McCormick, 118 Pa. 519; Drew v. Coal Co., 3 Cent. R. 389; District of Columbia v. McElligott, 117 U. S. 621; Lehigh Coal Co. v. Hayes, 128 Pa. 294; Phila. etc. R. Co. v. Hughes, 119 Pa. 302; Marsden v. Haigh, 14 W. N. 526; Wannamaker v. Burke, 111 Pa. 423.

*Mr. C. R. Savidge* (with him *Mr. Voris Auten*), for the appellee.

Counsel cited: Rummel v. Dilworth, 131 Pa. 509; s. c. 111 Pa. 343.

OPINION, MR. JUSTICE MITCHELL:

We have had occasion several times recently to lay down the rule that the test of liability of an employer to an employee for injury received in the course of the employment is not danger, but negligence. The employer is bound to furnish machinery and appliances that are of ordinary character and reasonable safety, and the former is the conclusive test of the latter. Whatever is, according to the general, usual, and ordinary course, adopted by those in the same business, is reasonably safe within the meaning of the law. As said by our Brother GREEN in North. Cent. Ry. Co. v. Husson, 101 Pa. 1, an employer is not liable "because a particular accident might have been prevented by some special device or precaution not

Opinion of the Court.

in common use;" and by our Brother WILLIAMS, in Ship-Building Works v. Nuttall, 119 Pa. 149, "it is not enough that some persons regard it as a valuable safeguard. The test is general use." Nor can the jury be permitted to set up their judgment against the general customs of the business: Titus v. Railroad Co., 136 Pa. 618. In the present case, it was in undisputed evidence that there were three kinds of hitches to the dumper in common use, each having its own peculiar advantages adapted to different conditions of the dirt-bank. Much evidence was given as to whether it would not have been practicable and better, under the conditions of this colliery, to use the side-hitch, or the box centre-hitch. This question, though made the burden of the contest, was entirely irrelevant. It was exclusively for the determination of the defendants themselves. Where, as in the present case, the evidence shows clearly that several methods are in general use, the choice being a matter of judgment, depending on the surrounding conditions, the owner has the absolute discretion to select according to his own judgment. The necessary control of his own business demands that this right shall be strictly maintained. Except to make another man's will for him, after his death, there is nothing which a jury is more apt to think it can do better than the owner, especially under the stress of a claim for damages by one who has been injured, than to say how another man's business ought to have been managed, and nothing in which juries should be held more strictly and unflinchingly within their proper province. As already said, there was a large amount of evidence as to the superiority of the side or upper hitch, the admission and discussion of which tended naturally to lead the jury to suppose that they might find a verdict on their own judgment which was the best; and this was put explicitly before them by the charge that "the proper question for you to determine is as to which of these hitches was the proper hitch for these parties to make use of at this colliery." This was giving the jury an entirely erroneous view of the point of the case and of their province in regard to it. They should have been told that if they found from the evidence that the lower hitch was the one in general use upon dirt-banks with an up grade, there was no negligence in the use of that hitch by the defendants. The ninth assignment of error must be sustained.

Opinion of the Court.

As the case is to go back for another trial, we may also say that the measure of damages quoted in the eighth assignment is somewhat vague, and the expression, "You would not be willing to lose your arm for the world, or for the wealth of a Vanderbilt," though followed by the caution that that would be no test of value, was an·undesirable form of putting the matter to the jury, and tended to inflame damages in a class of cases where juries are prone enough to measure verdicts by sympathy with the injured, more than by regard for the strict right of the parties.

The error complained of in the second and fourth assignments is, in brief, the charge that, while the law presumes a boy of fourteen to be capable of appreciating danger, and therefore responsible for his own negligence, yet he is not to be held to the same degree of prudence as a man of mature years. It is notable that in the legion of cases·upon negligence in our books this particular question has received little attention. But the principles upon which it must be settled are firmly established. All the cases agree that the measure of a child's responsibility is his capacity to see and appreciate danger, and the rule is that, in the absence of clear evidence of lack·of it, he will be held to such measure of discretion as is usual in those of his age and experience. This measure varies, of course, with each additional year, and the increase of responsibility is gradual. It makes no sudden leap at the age of fourteen. That is simply the convenient point at which the law, founded upon experience, changes the presumption of capacity, and puts upon the infant the burden of showing his personal want of the intelligence, prudence, foresight, or strength usual in those of such age. The standard remains the same, to wit, the average capacity of others in his condition. That this is the rule as to children under fourteen, is held in all our cases from Rauch v. Lloyd, 31 Pa. 358, to Sandford v. Railroad Co., 136 Pa. 84. That it also applies to infants over fourteen, follows from the same reasoning, and is expressly ruled in Oakland Ry. Co. v. Fielding, 48 Pa. 320. In that case, plaintiff's son, a youth between sixteen and seventeen, while running with a fire-engine stepped into a hole in. the street, fell, and was run over. The judge charged the jury upon the point of contributory negligence, that they must consider "the age, strength, size, and

Opinion of the Court.

activity of the plaintiff's son, and, if it was the habit of boys of his age and capacity to run with engines to a fire, and to assist in drawing them, the jury may take the fact into consideration in determining whether or not the plaintiff's son was guilty of negligence or misconduct. The plaintiff's son was bound to exercise the same degree of caution, prudence, and discretion that other boys of his age and capacity ordinarily exercise. If he did this, he was exercising ordinary care and prudence; but, if not, he was guilty of negligence." This was affirmed upon the reasons given by the judge below. Nagle v. Railroad Co., 88 Pa. 35, much relied on by appellant, is in entire harmony with the foregoing. In that case a boy of fourteen ran across a railroad track without looking, and the court held that this was negligence per se, and sustained a nonsuit. "At fourteen," says PAXSON, J., "an infant is presumed to have sufficient capacity and understanding to be sensible of danger, and to have the power to avoid it; and this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age."

In the present case, there was evidence that the unhitching of a dumper of this kind was manifestly dangerous; and, on the other hand, that it was entirely safe and commonly performed by boys. It is quite clear that the amount of danger depended very largely on the length and weight of the chain, the condition of the track, and the speed of the mule. These factors made up a varying standard which was necessarily for the jury to determine, and the judge was right in leaving it to them, and in the rule of law which he gave for their guidance.

The other points were based upon the assumption that the evidence was undisputed, and included a peremptory direction in defendant's favor. The learned judge was right in refusing them, for that reason.

Judgment reversed, and venire de novo awarded.