Harry Fick, by his next friend and father, Samuel Fick, *v.* Henry H. Jackson, trading and doing business as Thomas Jackson & Son, Appellant.

*Master and servant—Negligence—Risk of employment—Defective machine —Province of court.*

An employee who continues to use a machine which he knows to be defective and dangerous, takes upon himself the risk of any accident that may result therefrom, unless relying upon his employer's promise to remedy the defect, and the risk be not such as to threaten immediate danger, if he retain his employment and is injured without any fault of his own.

In the case at bar, it clearly appearing that the plaintiff had an intelligent knowledge of the risk he was running, that the accident was not the result of his inexperience or want of knowledge, and that the machine complained of was of the ordinary character used in the business, having been operated without accident for years, the jury should have been instructed to find for the defendant.

*Rule as to accident to employees from machinery.*

The ground of liability, in accidents to employees from machinery, is not danger but negligence, and the test of negligence is the ordinary usage of the business.

Negligence consists in furnishing a machine or appliance which is not only dangerous, but as well different from that in common use in the trade or business in which it is employed.

*Evidence—Negligence—Subsequent precautions—Test of negligence.*

An extra precaution taken by an employer after an accident is not per se evidence of negligence to be deduced from its not having been previously adopted, the test is whether the particular machine as it stood before was like others in common use.

*Negligence—Master and servant—Rule as to minors.*

The rule that an employer is only required to furnish such machinery and appliances as are above indicated, is as fully applicable to minor employees as to adults; should a different standard be adopted it is likely the former would soon cease to find employment in works where machinery is used, as no one would care to take the risk of employing them.

Argued Nov. 12, 1896.    Appeal, No. 100, Nov. T., 1896, by defendant, from judgment of C. P. Berks Co., June. T., 1895, No. 44, on verdict for plaintiff.    Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Trespass for personal injury to plaintiff.    Before ERMENTROUT, P. J.

The facts sufficiently appear in the opinion of the Superior Court.

Verdict for plaintiff for $933.33.    Defendant appealed.

*Errors assigned* were, (1, 2) refusal of binding instructions for defendant.

*Isaac Hiester*, with him *Stevens & Stevens*, for appellant.— The duty of the employer is to exercise ordinary care by providing suitable apparatus and machinery.    His obligation does not require the operation of the best machinery which can be procured or that which combines the latest improvements, but only that which is reasonably safe and in common use : Augerstein v. Jones, 139 Pa. 183; Dooner v. Canal Co., 171 Pa. 583; P. & R. R. Co. v. Hughes, 119 Pa. 301.

Latency of danger must be proved even in the case of minors : Melchert v. Brewing Company, 140 Pa. 448; Nagle v. A. V. R. R. Co., 88 Pa. 35; Kaufhold v. Arnold, 163 Pa. 281.

As to employee's responsibility for the hazards of his position, see Diehl. v. Iron Co., 140 Pa. 487.

The case should be reversed without a venire facias de novo : Railroad Co. v. Fries, 7 W. N. C. 433.

*C. H. Ruhl*, of *Ermentrout & Ruhl*, with him *Rourke & Heinly*, for appellee.—In view of the youth and want of experience in the business on the part of plaintiff, it was necessarily a question for the jury whether his employer had sufficiently warned and instructed him about the dangers of the employment, and how to avoid them, or had done all that was reasonably necessary to protect him from injury.

This contention is based upon Rummel v. Dilworth, 131 Pa. 509.    Nor is the doctrine there laid down and invoked in the

case in hand, refined away in the subsequent cases of Gillen v. Rowley, 134 Pa. 209, Zurn v. Tetlow, 134 Pa. 213, and Melchert v. Brewing Co., 140 Pa. 448.

The question of contributory negligence was for the jury: Germantown Rwy. Co. v. Walling, 97 Pa. 55; R. R. Co. v. McElwee, 67 Pa. 311; R. R. Co. v. White, 88 Pa. 327; R. R. Co. v. Werner, 89 Pa. 59.

OPINION BY WICKHAM, J., January 18, 1897:

The appellant in this case owned and operated a rope manufactory. Among the appliances in his establishment was a hemp picker; the principal parts whereof were an iron cylinder, about four feet long and two and one half feet in diameter, armed with iron spikes, and revolving horizontally, and a set of rollers in front thereof, between which the rough hemp was fed to the cylinder, to be picked or cleaned. The cylinder was operated by steam power, applied by means of a belt to a pulley at the left hand side, speaking with reference to the operator's station. The axis of the cylinder, at the right hand side, extended out some six inches and bore another pulley connected by a belt with a pulley at the rollers, thus communicating motion to the latter. The cylinder was enclosed in a wooden box. In front was a horizontal opening or slit, through which the hemp was supplied, and a similar one behind through which the hemp was thrown out. There was also a small opening, about six inches high by three inches wide, in the right hand end of the box, through which passed the axis of the cylinder. The top of the pulley, which has already been spoken of as being on this axis, was two and one half feet from the floor. From the nearest part of the pulley to a platform, built on a steam pipe, along a wall, parallel with the machine, the distance was two and one half feet. The platform was used for the purpose of piling hemp thereon, as well as bags containing the pickings and dirt coming from the machine. Very often the hemp was passed through the machine twice or thrice, the number of cleanings depending on the condition of the fiber as it came from the bale. When this had to be done it was the duty of the operator to carry the hemp back, in his arms, through the passageway between the machine and the platform. The pulley was unprotected. When the machine was in mo-

tion a current of air, strong enough to draw in a handkerchief, four inches distant, flowed into the box through the opening at the end.

For nearly twenty-three years before the happening of the accident for which the plaintiff seeks to recover, this machine, just as described, had been operated by men, and, it would seem, by boys also, without complaint from any one having it in charge. So far as there was any evidence at all on the subject at the trial, it was made clear that the pulleys on like machines in other factories were never covered or guarded, and that the passageway was not unusually narrow.

On the morning of December 13, 1894, while the plaintiff was carrying an armful of hemp through the passageway, from the rear to the front of the machine, some of the fibers were caught by the belt and pulley, and one of his arms was so injured as to require amputation below the elbow. His theory is, that he exercised due care in carrying the hemp, but that owing to the narrowness of the ·passage and the unprotected condition of the pulley, the accident occurred. The defendant, on the other hand, contends that the plaintiff was guilty of contributory negligence in trying to carry too large an armful of hemp, and in carelessly allowing the ends to hang down ; that he, the defendant, had the right to arrange and maintain his machinery to suit the necessities of his business and his space ; that practically it was placed as in similar factories, and as fully protected ; and that whatever dangers attended the plaintiff's employment were not only obvious to any one, but were actually known to himself.

Leaving out of consideration altogether the question of contributory negligence, we are forced to the conclusion, after a careful examination of all the evidence, that it was the duty of the court below to direct a verdict for the defendant. To have done so would have been not only just to the latter, but as well the truest kindness to the unfortunate plaintiff. While we deplore his misfortune, we cannot aid him at the expense of well established rules of law.

At the time of the accident he was within a few days of being eighteen years old, and, it is not questioned, had all the discretion usually possessed by young men of his age and class. He had been working with the machine at least four

weeks, and his own testimony shows that he fully understood the nature and probable consequences of the only risk complained of, namely, the danger of the hemp being caught by the belt and pulley as he carried it by. It is unnecessary, therefore, to consider how far he should be held bound by the rule as to an obvious danger, if it were left doubtful whether the danger were actually known to him. We quote from the testimony the following extracts, viz :

"Q. Why didn't it get caught in the pulley before? A. The wind of the machine brought it there. Q. There was the same wind of the machine before, was there not? A. Yes, sir. Q. If you watched as carefully as on previous occasions why did the threads get caught in the pulley? You say you were always careful to watch that the threads didn't hang down and get caught in the pulley? A. Yes, sir. Q. You say you had noticed, as you worked the machine, that the ends of the hemp would reach as low as the pulley? A. Yes, sir. Q. You know that they did that—hang down that low? A. Certainly, they did hang down. Q. They hung down that low on former occasions as well as on this occasion, did they not? A. They hung down some. Q. As long as you had been running the machine you knew that the ends of the hemp would hang down that low? A. Yes, sir. Q. And were liable to be caught in the picker? A. Yes, sir."

The well known general rule is, that an employee who continues to use a machine which he knows to be defective and dangerous takes upon himself the risk of any accident that may result therefrom, unless relying upon his employer's promise to remedy the defect, and the risk be not such as to threaten immediate danger, if he retain his employment and is injured without any fault of his own: Marsden v. Haigh & Co., 14 W. N. C. 526 ; Brownfield v. Hughes, 128 Pa. 194 ; P. & R. R. Co. v. Hughes, 119 Pa. 301. No complaint as to the narrowness of the passage, or the unguarded condition of the belt and pulley was ever made by the plaintiff to anyone. Unless we arbitrarily assume, in the face of all the proof, that he possessed less mental capacity than the average youth of his age and class, we are bound to say, as was done in O'Keefe v. Thorn, 24 W. N. C. 379, Ash v. Verlenden Bros., 154 Pa. 247, and other cases, wherein suits were brought in behalf of minors, that he

must be held as having accepted the obvious and known risks of his employment. In Nagle v. R. R. Co., 88 Pa. 35, cited approvingly and quoted from in Kehler v. Schwenk, 144 Pa. 348, it was held, that it was negligence *per se* for a boy of fourteen to run across a railroad track without looking, the court saying, " At fourteen an infant is presumed to have sufficient capacity and understanding to be sensible of danger and to have the power to avoid it; and this presumption ought to stand until it is overthrown by clear proof of the absence of such discretion and intelligence as is usual with infants of fourteen years of age."

In O'Keefe v. Thorn, supra, it appeared that a boy of fourteen had his hand crushed by a machine for stamping tin shingles, which he was operating. Our Supreme Court in sustaining the judgment of nonsuit, said: " All machinery is dangerous unless properly used. There was no danger in this particular machine that was not as obvious to a boy of fourteen as to an adult. He could see that if he placed his hand under the stamp it would be crushed. If boys are not allowed to use machinery until they have become accustomed to its use, it would be difficult for them to learn any useful trade or occupation by which to earn a livelihood."

In Ash v. Verlenden Bros., supra, a boy of thirteen was injured while tending a card machine in a woolen mill. He had been instructed in the use of the machine and testified that he understood it. A judgment of nonsuit was entered in the court below and affirmed in the appellate court on the ground " that the accident was not the result of his inexperience or want of knowledge."

In the present case, it clearly appearing that the plaintiff had an intelligent knowledge of the risk he was running, the accident was not the result of his inexperience or want of knowledge, and the jury should have been instructed to find for the defendant on that ground, if there were no other.

It has been suggested, that this conclusion is in conflict with some of the views expressed in Kehler v. Schwenk, supra, and the earlier case of Oakland Ry. Co. v. Fielding, 48 Pa. 321, and that the question of the plaintiff's capacity and knowledge, as well as the application of the rule, no matter how clear and uncontradicted may be the evidence, should be submitted to the

jury, merely because he is a minor. In other words, that the court has no power in any case, no matter what the circumstances are, to say as a matter of law, that a plaintiff who happened to be at the time he was injured a day or two under the age of twenty-one, assumed a plain, obvious, known and specific risk of his employment.

In Oakland Ry. Co. v. Fielding, supra, the plaintiff was not an employee of the defendant, and the question was, whether, under the conflicting evidence, he was guilty of ordinary contributory negligence. In Kehler v. Schwenk, supra, it was neither proved nor conceded that the minor understood the alleged manifest danger. The circumstances of these cases and of the one in hand are therefore different.

But the defendant was clearly entitled, on another ground, to have binding instructions in his favor. There was absolutely no proof of his negligence, such as the law requires, presented to the jury. "The ground of liability is not danger, but negligence, and the test of negligence is the ordinary usage of the business:" Ford v. Anderson, 139 Pa. 261. "Negligence can never be imputed from the employment of methods or machinery in general use in the business:" Augerstein v. Jones, 139 Pa. 183; Reese v. Hershey, 163 Pa. 253. "The employer is bound to furnish machinery and appliances that are of ordinary character and reasonable safety, and the former is the conclusive test of the latter. Whatever is according to the general, usual and ordinary course, adopted by those in the same business, is reasonably safe within the meaning of the law:" Kehler v. Schwenk, supra. It is to be regretted that the rule so clearly stated by Mr. Justice MITCHELL, in the above quotation, is so often disregarded. Without the explanation and qualification therein contained, the general rule that the master is required to furnish reasonably safe and suitable appliances, tools and machinery, and a safe place to work, may become very misleading.

It is a mistake to suppose, that a plaintiff always makes out a prima facie case by showing that he has been injured by a dangerous machine or appliance, and that the burden of proof is then invariably shifted on the defendant. The negligence consists in furnishing a machine or appliance which is not only dangerous, but as well different from that in common use in the

trade or business in which it is employed. In Augerstein v. Jones, supra, the court use language, which we quote as very applicable to the case at bar: "Not a witness was asked a single question as to what was the usual and ordinary way of constructing such machines, or whether this one was built in any respect differently from other machines of this kind. There is absolutely no information on that subject to be found anywhere on this record, and yet it is of the very essence of the plaintiff's case. Judged by the test of experience, the inference is, that it was adequately built, as no accident had occurred on it during nine years of constant use."

In Ford v. Anderson, supra, the plaintiff's hurt was similar to that sustained by the plaintiff here, and resulted from a somewhat similar cause. The negligence charged was the leaving, uncovered, a pulley belt, which supplied power to the machine at which the plaintiff worked. The court in commenting on the lack of proof of negligence, say, "It was not shown that it was usual to have belts inclosed, though, perhaps, they ought to be, or that the distance from the belt to the lever was unusually short, or that it was practicable to make it greater on a machine, in that place."

When the plaintiff's case in chief was closed, he had shown, first that he had suffered an injury; second, that it was caused by the pulley being uncovered; third, that this defect, if it were one, and its probable consequences, were fully understood by him—more so, indeed, so far as the evidence goes, than by his employer; and fourth, that the pulley was guarded, by a fence, after the accident. It will be seen that "the very essence" of the plaintiff's case was not even hinted at in the evidence he offered. No attempt was made to prove, either that it was usual to enclose such a pulley, or to have wider passages, in other factories, of any description, or that he was uninstructed.

The defendant, however, proved that the common usage in other like establishments was to leave the pulleys uncovered and that passageways as narrow as two feet were often used. No attempt was made at contradiction. As to the fence put up around the pulley after the plaintiff was injured, it appears that while it removed one danger, it introduced another, perhaps more serious, by preventing the belt from being promptly thrown off in case of accident. It is by no means improbable,

that if any one is hurt from the latter cause, it will be urged that the defendant was guilty of negligence, in maintaining a device that shields the belt and pulley, thus preventing quick access thereto. In regard to this matter we may add, that as the change which was made did not tend to prove that the machine, as it stood before, was not like others in common use, the evidence regarding it did not aid the plaintiff. In Grimont v. Hartman, 17 W. N. C. 252, an action brought by a minor whose arm was caught and crippled by a machine, in the defendant's works, it was proved that the defendant admitted that the machine should have been covered, and that it was covered, after the accident. It was held, however, that the plaintiff was properly nonsuited for failing to offer other sufficient evidence of negligence.

The rule is, and no other would be practicable, because, in effect, no rule at all, that an employer can only be required to provide such machinery as is in common ordinary use in the trade or business wherein he is engaged. If this were not the fixed and invariable measure of his duty, new and conflicting standards would be established by verdicts, based even on the same circumstances, and no employer, no matter how great his expenditure of money and exercise of care and prudence, in securing what he might deem proper appliances, could feel or be secure. What one jury might say was right, another, with different ideas, might say was all wrong. There could be no certainty, as each juror would have the right to insist on his own standard. Moreover, if the rule is not to be held fully applicable in the case of minors, as well as adults, it is likely that the former would soon cease to find employment in works where machinery is used, as no one would care to take the risks of hiring them. It is, therefore, really for the benefit of this large class of modern, industrial workers, that the standard, unfortunately ignored in the present case, should be rigidly maintained.

Judgment reversed.