Venzel, Appellant, *v.* Valley Camp Coal Co.

Argued March 18, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*W. Clyde Grubbs*, with him *Thomas M. Marshall*, for appellant.—The electricians, the operators of the cutting machine and the defendant would be liable for what might in the nature of things occur in consequence of the negligence that resulted from the operation of the cutting machine without a guard: Bunting v. Hogsett, 139 Pa. 363; Gudfelder v. Ry. Co., 207 Pa. 629; Jones v. American Caramel Co., 225 Pa. 644; O'Malley v. Transit Co., 248 Pa. 292; Jaras v. Wright, 263 Pa. 486.

The defendant is not to be excused from the violation of a statute because he did not know that there was gas in the entry: Jones v. Caramel Co., 225 Pa. 644; Walcofski v. Coal Co., 278 Pa. 84; Bayuk Bros. v. Martin Wilson Co., 81 Pa. Superior Ct. 195.

The presence of noxious gases in the Boyd Mine was not the cause of the death of Louis Venzel: Corbin v. Phila., 195 Pa. 461; Hydraulic Works Co. v. Orr, 83 Pa. 332; Schilling v. Abernethy, 112 Pa. 437; Murray v. Frick, 277 Pa. 190; Fitzpatrick v. Penfield, 267 Pa. 564; Shirey v. Gas Co., 215 Pa. 399; Koelsch v. Phila. Co., 152 Pa. 355; Heh v. Gas Co., 201 Pa. 443; Bardsley v. Gill, 218 Pa. 56; Fredericks v. Refining Co., 282 Pa. 8.

*Albert C. Hirsch*, with him *John M. Freeman*, of *Watson & Freeman*, and *Cresswell S. Shumaker*, for appellee.—Conditions in the Boyd Mine, over which defendant had no control, were the cause of Venzel's death. Inasmuch as plaintiff failed to eliminate such possible causes, the court below should have directed a verdict for the defendant: Sullivan v. B. & O. R. R., 272 Pa. 429; Cain v. Booth & Flinn, 294 Pa. 334; Zeher v. Pittsburgh, 279 Pa. 168; Cawley v. R. R., 44 Pa. Superior Ct. 340.

Plaintiff failed to show that the explosion in Kinloch Mine was caused by defendant's negligence; in fact, failed to show what caused the explosion.

On the contrary, the undisputed testimony shows the explosion could not have originated as claimed by plaintiff.

Defendant was not bound to foresee the remote possibility that carbon monoxide might escape from the Kinloch Mine, spread throughout the intervening Valley Camp Mine and enter the Boyd Mine, and therefore was not under a duty to notify the Boyd Mines of danger unforeseeable by the defendant: Rugart v. Baking Co., 277 Pa. 408; Kosson v. Power Co., 293 Pa. 131; Hoag v. R. R., 85 Pa. 293; Fitzpatrick v. Penfield, 267 Pa. 564.

OPINION BY MR. JUSTICE KEPHART, June 27, 1931:

This was an action of trespass brought by a widow to recover damages for the death of her husband who was found dead in the mine of his employer on the morning after a disastrous explosion in an adjoining mine owned by defendant.

Three mines under two different ownerships are involved in this controversy. Defendant, Valley Camp Coal Company, owned two, named Kinloch and Valley Camp. The latter was located directly north of the Kinloch Mine and was separated from it by a wall of coal; at one point in this wall where there had formerly been an open passageway, it was barred by double doors each two inches thick. The Boyd Mine, under another ownership, was located just north of the Valley Camp Mine, and communicated with it through an opening made by the Boyd owners with the consent of the Valley Camp owners for drainage purposes.

The Kinloch Mine was ventilated by a fan which forced air into the mine at the rate of 160,000 cubic feet per minute, most of which traveled northward toward Valley Camp where it was deflected and returned in a parallel course, turning and coming out through the

slope along which coal was conveyed to the surface. The Valley Camp Mine was ventilated by a fan, located on its western boundary, having a capacity of 110,000 cubic feet per minute. It drew air through openings on its north boundary and through the opening made by the Boyd Mine owners in their mine. The air coming in at these points continued along the eastern side of Valley Camp, then along the boundary between Valley Camp and Kinloch, and then to the fan. There was no artificial ventilation in the Boyd Mine and its air was kept pure chiefly by the fan of the Valley Camp Company used to ventilate the Valley Camp Mine.

About 9 : 30 p. m. of the night of February 20, 1928, an explosion occurred in the Kinloch Mine. It was charged that defendant's servants took a cutting machine, improperly guarded against electric sparks, into a portion of the Kinloch Mine where a quantity of gas had accumulated, and that, while the motor was in use, the explosion took place, demolishing the double doors between the Kinloch and Valley Camp Mines and permitting dangerous gases to pass through to the Boyd Mine. The morning following the explosion, Venzel, plaintiff's husband, entered the Boyd Mine and was later found dead there.

His death was due either to carbon monoxide gas, generated by the explosion, traveling a distance of three miles by the shortest air course to the point where his body was found, or to the fact that the ventilation of the Boyd Mine ceased when a short circuit was created in the ventilation of the Valley Camp Mine by the destruction of the double doors. The ventilating fans were kept in operation after the explosion, but the fact that the doors were down and that the air currents in the ventilating system had been 'reversed by the explosion was not discovered until the evening after the explosion. Deceased's widow brought an action to recover damages from the Valley Camp Coal Company for the loss of her husband. The jury found against her claim and the

court in banc sustained its verdict. This appeal by the widow followed.

The owners of the Boyd Mine were under a duty to provide a safe place for their servants to work. This duty was as broad as the circumstances surrounding the work demanded. This duty has found expression in the several acts of assembly relating to mining coal. It was the nondelegable duty of such owners to provide a ventilating system and, if necessary, such other safeguards as would protect their employees from gases and other noxious substances on or likely to come on the premises. If they failed in this duty, they were responsible for any resulting injury. In this case, liability for such failure has been placed on decedent's employers and met through compensation now being paid to the widow under the Workmen's Compensation Act.

Notwithstanding any neglect of duty in this respect, the question on which this appeal is predicated is the liability of the owners of the adjoining mine for the accident. There is no absolute liability on such owners. They were making a natural and normal use of their property in removing coal, and the highly dangerous gas which came from the adjoining strata of clay was merely incidental to a natural and normal use of their property. This case is unlike Rylands v. Fletcher, L. R. 3 H. L. 330, where a dam was constructed to store water. In that case, substances which proved to be of a dangerous nature were artificially collected on the land, and the House of Lords held that an owner collected such substances at his peril and was liable for the consequences when they escaped and did injury to another. But here the gas accumulated through a normal and natural use of the property, since mining is the natural use of coal land, even when done by machinery, and ordinarily no adjoining owner can complain when the mining is done in a careful and proper manner. To sustain a claim for damages resulting from mining, it is

necessary to show that it was done negligently with respect to the party injured.

Where dangerous gases accumulate on a property from its lawful use in mining coal, and where it is reasonably foreseeable that such gas may escape and injure persons on adjoining property, there is an affirmative duty on the owner to prevent, if possible, the escape of such gases to his neighbor's property. We have so held with regard to water coming from mines which drains into streams used as public drinking supplies: P. R. R. Co. v. Sagamore Coal Co., 281 Pa. 233. To that extent, the case of Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, and all other Sanderson Cases treating the subject, have been overruled. It is the owner's duty to use such care as a reasonably prudent man would use under the circumstances to safeguard not only his employees but other persons within the zone of known or apprehensible danger on adjoining properties from injury by reason of the escape or negligent ignition of such gas. Whether the gas which killed plaintiff's decedent was natural gas which had accumulated on the Kinloch Mine or carbon monoxide resulting from the explosion, defendant's duty to the employees of the Boyd Mine was performed when it, first, provided proper ventilation for its mines, and, second, left a solid wall of coal between the Kinloch and the Valley Camp Mines, barring the only opening between the mines with two sets of doors, each two inches in thickness. On this theory, the plaintiff, as her case is presented, cannot recover for breach of defendant's affirmative duty, for there was no such breach.

We need not rest our decision on the result of the foregoing determination alone, for we have the further questions as to whether the deceased was within the zone of apprehensible danger and whether defendant's act was the cause of the injury to plaintiff's husband.

When injury is suffered by one not within the scope of a duty, that is, one to whom it is not forseeable and

probable that injury will occur by reason of the failure to use proper care, such person has no right to recover, because there has been no breach of duty with regard to him: Fitzpatrick v. Penfield, 267 Pa. 564, 575.

The owners of the Valley Camp Mine could not reasonably be expected to foresee, as a result of an explosion, first, that the two sets of doors would be broken down by its force, second, that the air would be short circuited and would leave the Boyd Mine without ventilation, third, that the carbon monoxide gas caused by the explosion would travel a distance of three miles from Kinloch Mine to the Boyd Mine when such gases would normally have traveled in the opposite direction but for the short circuit. If these various results were not foreseeable, they were not probable results, in which case plaintiff's husband was not within the scope of defendant's duty, nor was the defendant's act the proximate cause of the injury.

Responsibility for negligence must end somewhere; otherwise, an admittedly correct principle may be carried too far and become ridiculous in practical business life. Liability for negligence depends on antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury could be foreseen by an ordinarily intelligent person as the natural and probable outcome of the act complained of; the law does not require the parties to go beyond this in their relations with each other: Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408, 413, 414; Hoag & Alger v. Lake Shore and Michigan Southern R. R. Co., 85 Pa. 293, 298; Bruggeman et al. v. City of York, 259 Pa. 94, 98; Kosson et al. v. West Penn Power Co., 293 Pa. 131, 134.

With regard to the first question, that of foreseeability, it may be said that the force of an explosion can rarely be estimated. Defendant's duty was not that of an insurer. It was required to use ordinary and reasonable precaution. This it did when there were built two

doors of a thickness one might expect would prevent the explosion, which was not directly opposite them, from tearing them down. As the record stands, there is no challenge to this conclusion. Even with the double doors down and both fans working, the natural supposition would be that the deadly gas, generated as a result of the explosion, would be taken out out by the Valley Camp fan. It certainly could not be foreseen that it would traverse all these openings, pass into the Boyd Mine and cause the death of the plaintiff's husband.

This fact should be noted, in addition to the absence of foreseeability of the accident, that there was not sufficient evidence to show that the carbon monoxide generated by the explosion actually permeated this distance of three miles into the Boyd Mine and caused Venzel's death. The Boyd Mine constantly contained accumulations of gas and was without ventilation save that provided by the Valley Camp facilities. There may have been sufficient mine gas generated in the Boyd Mine which, in the absence of ventilation, could have caused Venzel's death. Defendant was not responsible for this condition in the Boyd Mine, nor was the defendant under any duty to ventilate that mine, but, as we have stated, this was the nondelegable duty of Venzel's employer, the Boyd owners. So, even if the results of the explosion may be said to have been foreseeable, which they were not, there was not sufficient evidence to establish the fact that carbon monoxide from the Kinloch Mine did in fact cause Venzel's death. It was possible that his death resulted from the gas generated in the Boyd Mine, but there was no preponderating probability as to which gas caused his death. If either one of two possible causes may be responsible for an injury, for one of which defendant was not responsible, it cannot be held liable: Alexander v. Penna. Water Co., 201 Pa. 252; McAvoy v. Kromer et al., 277 Pa. 196; Propert v. Flanagan et al., 277 Pa. 145.

Furthermore, the cause of the explosion was not satisfactorily developed. Where and how it occurred does not appear with any degree of probability. The mere fact that the cutting machine was in the mine without a plate over the resistance coil would not, standing alone, give rise to proof or inference that a spark came from it. The position of the hook over the trolley wire, if it had been there, would not of itself be sufficient to fix liability on defendant for negligence. The machine was not shown to have been in use. It was back a sufficient distance from the face of the mine—working, and was so placed that a different inference could have been drawn from its position in the mine. While, in such cases as this, it is difficult to explain just how an accident happened, there must be some evidence of reasonable probability that it was caused by the defendant's negligence before liability for damages can be fastened upon him. Fortunately for this Commonwealth, through one of the most humane acts of the legislature, we have the Workmen's Compensation Law, which provides payment to the injured or their families for a loss such as this. Plaintiff is at the present time receiving compensation, and, while we would not on that account bar recovery, we merely mention it to show she has some alleviation for her distress. After a careful study of the record, we are convinced that, under the circumstances of this case, there is not sufficient evidence on which to impose liability. We need not then consider the assignments of error in relation to the charge of the court to the jury.

Judgment affirmed.