(No. 23196.—

Howard McCreery, Appellant, *vs.* The Libby-Owens-
Ford Glass Company, Appellee.

*Opinion filed May 12, 1936.*

Sol Andrews, for appellant.

Ashcraft & Ashcraft, Duncan & O'Conor, Mar-
shall, Melhorn & Marlar, and Angerstein, Piggott &
Angerstein, (Russell F. Locke, Alan E. Ashcraft, Jr.,
Andrew J. O'Conor, and Thomas C. Angerstein, of
counsel,) for appellee.

Mr. Justice Shaw delivered the opinion of the court:

By his complaint in the circuit court of Cook county,
plaintiff, appellant here, sought to recover damages from
the defendant, appellee here, alleged to have resulted in
his becoming affected with an occupational disease known
as pneumonoconiosis. He alleged that the defendant was
engaged in the production of glass and similar products
which was, in various processes of manufacture, productive
of dust of such a character as to be harmful to human
beings. His complaint does not allege the length of time,
but states in general terms that "for a considerable length

of time he worked in that department of defendant's plant where the dust occurred;" that defendant knew, or in the exercise of due care should have known, that the processes of manufacture described in the complaint were apt to produce the disease from which the plaintiff now claims to be suffering, and which is peculiar to that occupation. There is a general allegation that the plaintiff was in the exercise of due care for his own safety and was ignorant of the dangerous character of the dusts to which he was exposed, but no allegation that he could not, with due care, have learned this fact. It is further alleged that the defendant never informed him of the danger and that, by reason of the acts complained of, the plaintiff became afflicted with the occupational disease mentioned and also with tuberculosis. It was alleged that the defendant negligently failed to provide plaintiff with a reasonably safe place in which to work, in that there were no "proper" suction fans or other reasonable apparatus installed; that there were no "reasonable" masks or respirators provided to be worn; that defendant failed to warn plaintiff of the danger of contracting the occupational disease and negligently ordered plaintiff to work in spite of the danger to which he was exposed. Three other paragraphs of the complaint are similar to the foregoing except that they charge the same acts of the defendant to have been willful and wanton. Defendant interposed a general motion to dismiss, in the nature of a demurrer, based on the contention that the amended complaint failed to charge the defendant with having violated any statute of the State of Illinois; that in the absence of a statute the defendant is not liable to the plaintiff for his incurring an occupational disease, and that such an injury was not one for which the employer would be liable at common law. This motion of the defendant was sustained by the trial court, that judgment was affirmed by the Appellate Court and the cause brought before us by appeal on a certificate of importance.

Prior to our decisions in *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130, *Novarro* v. *Illinois Steel Co.* id. 483, and *Boshuizen* v. *Thompson and Taylor Co.* id. 160, the complaint, in the present case, charged various violations of sections 1 and 12 of the Occupational Diseases act. These charges were eliminated, by amendment, after the foregoing decisions were rendered, so that the plaintiff now founds his claim to recovery entirely upon the common law, and the corner stone of his case is the established principle that an employer owes his employee the duty of furnishing him a reasonably safe place in which to work.

Except for an effort to change the basis of liability from one founded on violation of a statute to one existing at common law, it is difficult to discover any difference between this case and *Parks* v. *Libby-Owens-Ford Glass Co. supra,* which we decided a year ago. As in the case at bar, the plaintiff charged the defendant with a willful failure to provide proper suction fans, masks, respirators, or other devices to prevent him from inhaling the dusts of manufacture, with the additional allegation that these failures were in violation of section 1 of the Occupational Diseases act. There were other allegations similar to the ones in the present complaint which were charged to be in violation of sections 12 and 13 of the Health, Safety and Comfort act. In that case we pointed out that the legislature had recognized the existence of occupational diseases and in the companion case of *Boshuizen* v. *Thompson and Taylor Co. supra,* which was decided at the same term of court, we called attention to the fact that this type of legislation was a complete stranger to the common law, with no common law origin or history. In the latter case we also observed that the legislation was without any generally accepted body of precedents, no established standards of conduct and no common knowledge or understanding on which it was based. In the *Parks case, supra,* we re-affirmed

and explained our holding in *Burns* v. *Industrial Com.* 356 Ill. 602. We sustained the defendant's contention as to the unconstitutionality of the sections of the acts above mentioned, and held that a statute is void to which it is impossible to give any precise or intelligible application in the circumstances under which it is intended to be applied. We held that no sufficient standards were laid down for employers in determining whether or not they came under the act, or in determining what would be reasonable means to be adopted for the protection of employees from occupational disease. Among other things we said: "The plaintiff argues, however, that a jury is especially equipped to determine the standard of reasonable and approved devices, and asserts that the history of the common law is replete with instances of juries passing on what is 'reasonable.' This argument ignores the fact that the liability here is of statutory origin and did not exist at common law. It is definitely settled that where words employed in a statute are unknown to the common law and are also shown to have no well-defined meaning in the particular industry to which they are directed, any duty enjoined upon an employer by such statute must fail for want of certainty. (*Champlin Refining Co.* v. *Commission*, 286 U. S. 210.) In that case it is said 'The general expressions employed here are not known to the common law or shown to have any meaning in the oil industry sufficiently definite to enable those familiar with the operation of oil wells to apply them with any reasonable degree of certainty. The meaning of the word waste necessarily depends upon many factors subject to frequent changes.' Since the duties enjoined upon employers by section 1 in the present case are purely statutory, it is obvious that the common law affords neither precedent nor aid in interpreting the meaning of the words 'reasonable and approved devices.' " Other parts of the opinion are pertinent to the present case but we will refrain from quoting further.

In the case of *Boshuizen* v. *Thompson and Taylor Co. supra,* we said: "While the word 'reasonable' has a fixed, definite meaning at common law as applied to a standard of degree and diligence, yet the word as used in section 1 cannot be given that sense, as it is employed as descriptive of the 'devices, means or methods' commanded to be furnished and adopted by the employer. 'Approved,' as used in section 1, is not more intelligible than 'reasonable' as employed in that same section. 'Approved' has no definite, special, technical, trade or common law meaning or meaning by established precedents. By whom the approval mentioned is to be made is left open to conjecture. Is the approval contemplated that of the employer using the particular device, or some other employer or employers engaged in the same industry, or the public generally, or a court or jury trying a cause arising out of an alleged violation of section 1? Even though an act on its face appears to have a meaning, yet if it is not possible to give it a precise and intelligible application under the conditions intended for it to operate it is void.—*Mayhew* v. *Nelson,* 346 Ill. 381; *People* v. *Sholem,* 294 id. 204; *In re Di Torio,* 8 Fed. (2d) 279." In the same case, referring to the indefinite and uncertain provisions of section 1 of the Occupational Diseases act, we said: "It necessarily follows that juries in that situation would be the judges of the law as well as the evidence, and in case of trial without a jury the presiding judge would have no stable, definite and certain rule of law for his guidance in administering justice between the parties. It would be unjust to hold the employer liable in the exercise of his business knowledge for his failure to guess correctly as to his duty under section 1 where the statute itself creates no criterion for his safe and sure guidance. Its provisions are so vague, indefinite, uncertain and incomplete that no sufficiently clear and intelligible standard of duty is defined thereby. A statute which requires the performance of an act in terms so indefinite, un-

certain and puzzling that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application transcends due process of law."

As above indicated, and as plaintiff argues, it is a long established rule of common law origin that an employer must furnish his employee a reasonably safe place in which to work. An examination of the cases in Illinois and at common law which support this rule discloses that it is based upon decisions involving accidental injuries rather than occupational diseases. Reflection makes it apparent that this must be so because occupational diseases were unknown to the common law. The weakness of the argument lies in its failure to distinguish between a "safe" place to work and a "healthful" or "sanitary" place in which to work. One searches in vain for any precedent at common law establishing any duties as to healthfulness or sanitation. In *First Nat. Bank* v. *Wedron Silica Co.* 351 Ill. 560, and again in *Raymond* v. *Industrial Com.* 354 id. 586, we pointed out the distinction between an occupational disease and an accidental injury and we can see no occasion for re-examining or further discussing that question.

Plaintiff does not complain of the breach of any duty known to the common law and, as above pointed out, his allegations as to statutory violation were eliminated, by amendment, after our decisions in the cases above quoted from. To sustain his claims would not only involve us in judicial legislation, but would require us to establish a rule which we have said even the legislature may not enact. We have held that the legislature is prohibited by constitutional principles from setting up indefinite and uncertain standards for the guidance of employers and we can find no power in the judicial department of government to do that which we have said the legislature may not. It is clear that fundamentally, and of necessity, it can not be due process of law to impose a burden which is not, and never has been, defined, and the extent of which must,

in every case, await the verdict of a jury or the finding of a court. To sustain plaintiff's views would bring about inequality and injustice. Of two men working in the same room and under identical circumstances, one might secure a large verdict and the other none, depending entirely upon an interpretation of law made by a jury based upon rules unknown to the common law and never specifically enacted by any legislature. Not only is this so, but such a verdict might be rendered against an employer even if he had honestly used his best judgment and secured the best of technical advice. Even experts might disagree as to the proper ventilation of rooms of different size and shape, or housing different processes of manufacture. These matters must be settled by specific legislation of such certainty as to be understandable by those who are required to comply with the law, as well as the courts and juries who are to administer it. Without observance of this elementary principle which we have announced in *Parks* v. *Libby-Owens-Ford Glass Co. supra,* and *Boshuizen* v. *Thompson and Taylor Co. supra,* there can be no due process of law nor any protection for either the employer or employee in their respective rights to carry on manufacture and labor therein.

As we pointed out in the *Boshuizen case, supra,* the matter of occupational diseases has neither common law history nor origin. We should add that those diseases were likewise unknown to medical science during the formative period of our common law. Sanitary and health engineering are relatively new sciences which have rapidly produced improvements of great value. An examination of our statutes reveals that the legislature has followed these new sciences and has enacted many provisions for the protection of health and life from hazards either little known, or unheard of, in common law times. Our previous decisions have indicated the limits of judicial authority and we can not, even in the interest of progress, invade legislative

328

ground, nor, by indirection, reach the same end by approving a complaint which, as a precedent, would deprive litigants of due process of law.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*