## Fox, Appellant, *v.* Keystone Telephone Company et al.

Argued January 28, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Grover C. Ladner,* of *Ladner & Ladner,* for appellant.

*John J. McDevitt, Jr.,* and *Lewis M. Stevens,* with them *Joseph M. Leib,* for appellee.

OPINION BY MR. JUSTICE BARNES, May 17, 1937:

The plaintiff was the manager of a bakery shop, located near 54th Street on the north side of City Avenue, which extends along the boundary line between the City of Philadelphia and Lower Merion Township, Montgomery County. A pay station telephone of the defendant

telephone company was installed in the store where the plaintiff was employed. In her testimony plaintiff described the occurrence on September 28, 1933, which gave rise to this action, as follows: "I picked up the Keystone telephone receiver to call the supervisor and there was a loud explosion came through the receiver and the room lit up in a blue flash and I was knocked to the floor and received a severe shock and pains in my ear. I wasn't able to hear anything at all for some time and it just felt as though the top of my head was being blown off." The plaintiff was taken to the hospital by her sister, who was also employed at the bakery shop. After spending two hours at the hospital for purposes of examination and treatment, she returned to the shop to arrange about matters for which she was responsible, then went home to bed and summoned her family physician.

Plaintiff asserts that as a result of this accident her hearing is impaired, and that she is still suffering from nervous exhaustion. An excessive saliva condition, accompanied by hemorrhages and vomiting spells, has developed. She claims to have severe pains in her ears, and pains down her back, extending beyond the middle of the body. She testified that these ills have made her employment impossible. Evidence of medical and lay witnesses was introduced to show that prior to the occurence the plaintiff was a healthy young unmarried woman.

In this action of trespass instituted by plaintiff, the defendant telephone company brought in the City of Philadelphia and the Philadelphia Electric Company as additional defendants. The evidence shows that the wires and cables of the defendant and the additional defendants were all strung on poles owned by the Philadelphia Electric Company. These poles carried five sets of cross arms supporting in descending order the following wires: Topmost were the Electrical Bureau lines of the City; on the second arm were the high tension lines

of the defendant electric company, carrying 2300 or more volts; the third arm supported the ordinary house current line of the same company, carrying about 110 volts; the fourth arm was without wires, and the bottom, or fifth one held the service wires of the defendant telephone company. The telephone company was permitted to locate its wires on the poles upon indemnifying the electric company against any loss arising from their use.

There seems to be no dispute as to the cause of the accident. It is established by the evidence that a city wire used for police and fire alarm purposes, which employees of the city's electrical bureau were removing from the topmost cross arm at the time of the accident, broke or became disengaged at the point where it was tied to a glass insulator on the cross arm. In falling this wire crossed and contacted both the high tension wire of the electric company, two feet below, and the cable of the telephone company, twelve feet below, thereby circuiting the high voltage along the telephone lines into the bakery shop.

The trial judge at the conclusion of the testimony directed a verdict for the Philadelphia Electric Company, and then permitted the case to go to the jury, which returned a verdict in favor of the plaintiff against the telephone company. The jury also made the following finding: "The jury find from the evidence that the Keystone Telephone Company failed to exhibit the requisite degree of care 'in that the wires were not sufficiently insulated to safeguard the public.'" It rendered a verdict in favor of the City of Philadelphia.

The telephone company filed motions for judgment non obstante veredicto and for a new trial. The rule for a new trial was dismissed without discussion by the court below, but the motion for judgment non obstante veredicto was granted by the court in banc, and judgment thereon entered in favor of the defendant. This appeal was then taken by the plaintiff.

The single question before us is whether there was sufficient evidence of negligence on the part of the defendant to submit the case to the jury.

The high degree of care required of a utility company supplying electric current, or using electricity for the operation of its service, to protect its customers and patrons from injury, has been recognized almost universally by the courts. It has been pointed out that electricity is potentially the most dangerous of the utilities in common use to-day. Leaking gas normally can be detected by its odor, and probably most gas leaks are discovered and repaired before serious injury results. Water escaping from confinement frequently announces itself to sight or hearing before it does substantial harm. Electricity, however, is a most subtle and dangerous agency. It lurks unsuspected in the simple and harmless wire, and gives no warning of its dangerous presence.[1] As it was said in *Fitzgerald v. Edison Elec. Co.,* 200 Pa. 540, 543: "Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is *not apparent to ordinary observation,* and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case."

This Court has many times defined the duty of care imposed upon a utility company supplying a service which involves the use of electricity: *Alexander v. Nanticoke Light Co.,* 209 Pa. 571, 579; *Crowe v. Nanticoke Light Co.,* 209 Pa. 580; *Long v. St. Clair Boro.,* 253 Pa. 92; *Seeherman v. Wilkes-Barre Co.,* 255 Pa. 11. In *Derrick v. Harwood Elec. Co.,* 268 Pa. 136, Mr. Justice WALLING referred to this duty of care as applied to an electric company, where damage was caused by a high voltage current entering the premises of its customer

---

[1] See article "Tort Liability of Suppliers of Electricity" by Lester W. Feezer, 22 Washington University Law Quarterly 357; April, 1937.

over its wires, and said, (p. 141): ". . . while an electric company is not an insurer, yet, when its customer is injured by an excessive current of electricity entering his premises on the company's wires, the burden is upon the latter to offer such explanation as will relieve it of responsibility."

The degree of care required of a telephone company is of like character. While the current it uses is a harmless one, it cannot be unaware that its wires can become the conductor of a dangerous one, and it must do all that human care, skill and vigilance can devise to protect its patrons from injury caused by an electric current.

If such an injury does occur, there is a presumption that the telephone company failed to use due care. That principle was settled, particularly with respect to the transmission of a current of high voltage over the wires of a telephone company, in *Delahunt v. United Tel. & Tel. Co.*, 215 Pa. 241, and the language used there may well be considered in connection with the facts of the present case. It was said (p. 247): "In this case it may be still further conceded that the current, with which the deceased came in contact did not come from the exchange of the appellant; but at the same time it cannot be questioned that it came over one of its wires leading to the telephone of one of its patrons. . . . It was, therefore, as much the duty of the company to see that no such current should thus pass over its wires as it was to send only a harmless one from its own exchange. Its duty to its patrons was to exercise at all times the highest degree of care and vigilance to protect them from a dangerous electric current over its wires from any source. . . . When they do become conductors of it, there is reasonable evidence that there has been a neglect of duty, and the burden is cast upon the telephone company of showing that it had not been negligent."

To establish that it had exercised proper care, the telephone company produced expert testimony that its cable

and appliances here in use were of the standard type customarily used by communication companies; that they were adequately insulated against all hazards reasonably to be anticipated, and were protected by every device known to science, including the protective fuse or "arrestor," and the insulation of the telephone receiver against 10,000 volts; that when the contact between its cable, the electrical bureau wire and the high tension line occurred, it caused the cable to be burned, and the fuse to blow out in the bakery, but no excessive electric current had passed into the telephone instrument, thereby establishing beyond a scientific doubt that the "arrestor" had performed its function of intercepting any dangerous quantity of current coming over the line. The defendant's experts also testified that the practice of stringing telephone cables on poles under an electric light or high power line had the approval of the Public Service Commission of this state.

The plaintiff sought to show specific negligence on the part of the telephone company; that it was not exercising due care when it placed a telephone cable (insulated only against 700 volts) close to a dangerous 2300 volt high tension wire, along with other wires, all liable to breakage from corrosion or negligent handling, and to trust to an "arrestor" which was admittedly inspected but once a year, or when a complaint was made, to insulate and safeguard its cable from transmitting a high voltage current; that the "arrestor" was inadequate as shown by the fact that the accident *did* happen, and plaintiff *was* injured; that the safety device may have saved plaintiff's life, but it failed to save her from serious injury. On her behalf testimony was introduced that the cable could have been insulated so that plaintiff would not have been injured.

If the evidence introduced by the defendant to show that it had availed itself of the methods and appliances customarily used in the business in which it was engaged had been believed and accepted by the jury, it would

have been in relief of the burden of responsibility which rested upon it. This is true because the custom or practice prevailing in a particular business in the use of methods, machinery and appliances is a most important factor in determining the question of negligence: *Delaware River Iron-Ship Building Wks. v. Nuttall,* 119 Pa. 149; *Titus v. Railroad Co.,* 136 Pa. 618; *Kilbride v. Carbon Dioxide and Magnesia Co.,* 201 Pa. 552; *Farne v. Penna. Lighting Co.,* 275 Pa. 444. Where, as in the present case, proof of usage or custom depends upon oral testimony, the weight and credibility of such evidence is exclusively for the jury. In *Sorensen v. Quaker City Poster Adv. Co.,* 284 Pa. 209, 211, the present Chief Justice stated the principle as follows: "However indisputable the proof as to usage or custom may have been, depending as it did on oral testimony, the jury was the sole body to determine that fact: *Reel v. Elder,* 62 Pa. 308, 316; *Lydes v. Royal Neighbors of America,* 256 Pa. 381, 384; *Duffy v. York Haven Water & Power Co.,* 233 Pa. 107, 110; *Shaughnessy v. Director General of Railroads,* 274 Pa. 413, 416."

In *Fisher v. Pomeroy's, Inc.,* 322 Pa. 389, the defendant presented a point for charge in effect that negligence was disproved by the showing of defendant that the methods and appliances used by it were those ordinarily employed in the business in which it was engaged. Mr. Justice LINN said (p. 392): "It was in substance a request for binding instructions on the whole case, which could not have been given; the evidence was oral and the question was for the jury: *Title Guaranty Co. v. Barone,* 319 Pa. 499; *Nanty-Glo v. American Surety Co.,* 309 Pa. 236." See also *MacDougall v. Penna. Power & Light Co.,* 311 Pa. 387.

So, upon the oral testimony in the present case, it was for the jury to say whether the precautions taken by the defendant telephone company were adequate,—whether the methods and appliances used by it had the sanction of general usage in that business, and whether the com-

pany had discharged its duty of care, so that it was blameless under the law. Even though the evidence offered by plaintiff might have been circumstantial, and the opposing proofs of defendant presented "a strong defense," yet the case must go to the jury: *Derrick v. Harwood Elec. Co.*, supra; *Sorensen v. Quaker City Poster Adv. Co.*, supra.

The jury found that the telephone company "failed to exhibit the requisite degree of care in that wires were not sufficiently insulated to safeguard the public." There is, in our opinion, competent evidence to justify and support this finding, and we are satisfied that the jury's rejection of the defendant's contentions, looking to its exculpation of negligence, was not capricious.

The question of defendant's freedom from fault, together with all other issues involved, was properly submitted to the jury. It has found that defendant failed to exercise the duty of care imposed upon it by law. We have carefully reviewed the record and it cannot be said that its determination was unwarranted by the evidence, nor can the learned court below properly reach that conclusion. Hence it was error on its part to enter judgment in favor of defendant non obstante veredicto, and its order must be reversed.

At the same time that the telephone company filed its motion for judgment non obstante veredicto, it also filed a rule for a new trial, and it filed rules for new trial as to both additional defendants. It is apparent, however, that the court below did not pass upon the merits of these rules, but discharged them as a matter of course following its order for the entry of judgment non obstante veredicto in favor of the telephone company.

It is strongly urged by the telephone company that, in the event that the judgment in its favor be reversed, a new trial as to all three defendants should be granted. It asserts that it was error for the trial judge to direct a verdict in favor of the electric company for the reason that it was the escape of the high voltage current from

its power line which resulted in this accident, and there-
fore it was for the jury alone to determine whether the
company had taken proper precautions and used due
care in the insulation of its wires against injury to the
public.

With respect to the city, it further alleges that it was
error for the court below to charge the jury as follows:
"It is strongly probable that in maintaining these wires
the city was acting in a governmental capacity. The
evidence would seem to indicate that the wires were
maintained to furnish an alarm system for the fire de-
partment and a similar communication and alarm sys-
tem for the different branches of the police department
of the city, and in my judgment, either of these func-
tions is a governmental one." It claims that by this in-
struction it was prejudiced in its defense, and the jury
influenced to believe that any verdict against the city
would be set aside. It is asserted that this instruction
is in conflict with the principles of law as applied by this
Court in the cases dealing with the subject.[2]

Finally, the telephone company assigns as reason for
a new trial that the verdict of the jury was excessive
and was not supported by the evidence of the case. In
this connection also it alleges that the jury in arriving
at its verdict was permitted to consider as part of her
injuries a thyroid condition of plaintiff, which defend-
ant says was not attributable to the accident.

Under the circumstances, we have reached the con-
clusion that an opportunity should be given to the court
below to consider the rules for new trial upon their
merits. For this purpose we have decided that these
rules be reinstated: *Osche v. New York Life Ins. Co.*,
324 Pa. 1; *Petroleum Fuel Eng. Co. v. Hemphill*, 94 Pa.
Superior Ct. 362, and that the record be remitted with

---

[2] Upon this point defendant telephone company refers to the fol-
lowing cases: *Herron v. Pittsburgh*, 204 Pa. 509; *Bodge v. Phila-
delphia*, 167 Pa. 492, and *Emery v. Philadelphia*, 208 Pa. 492.

directions to the court below to consider the reasons urged in support of a new trial, and to dispose thereof.

The order of the court below entering judgment non obstante veredicto in favor of the Keystone Telephone Company is reversed; the verdict in favor of the City of Philadelphia, and the order directing a verdict in favor of the Philadelphia Electric Company are set aside. The rules for new trial are reinstated.