Prattico *v.* Hudson Coal Company, Appellant.

Argued January 26, 1943. Before MAXEY, C. J.; DREW, LINN, PATTERSON, PARKER and STEARNE, JJ.

*Reese H. Harris,* with him *C. P. O'Malley,* of *O'Malley, Hill, Harris & Harris,* and *Rudolph S. Houck,* for appellant.

*John Memolo,* with him *S. U. Colbassani,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, June 30, 1943:

This case is the first to come before us involving an action of trespass to recover damages for the occupational disease of anthro-silicosis, commonly known as "miner's asthma." When the jury empaneled to try the case disagreed and was discharged, defendant moved for judgment on the whole record pursuant to the Act of April 20, 1911, P. L. 70. The court below dismissed the motion, after argument, and ordered a retrial. This appeal followed.

The fundamental question is whether or not a plaintiff, who admitted he knew coal mining "must make dust," has made out a case for the jury by showing merely that he has contracted silicosis after working for eight years in the "face" of coal mine chambers where the air became so dust-laden that "intermittently—at times" visibility to see another person was only three feet. On behalf of plaintiff it is contended that this question must be answered in the affirmative—that "by common law and by statute . . . the defendant had a duty to *insure* the plaintiff a safe place to work" and that "the plaintiff's admitted physical condition is a conclusive answer that he was not furnished a safe place to work." The court below stated that "the proper determination of the case . . . could be a judgment for the defendant," but sustained the position of plaintiff because "the defendant is much more interested in having the law properly construed by a court whose construction is final than the plaintiff" and because "the plaintiff is unable to bear the burden of the appeal". We all agree that the action of the court below in refusing the defendant's motion for judgment was improper and cannot be sustained.

The decisions cited to us as controlling by plaintiff—*Plazak v. Allegheny Steel Co.*, 324 Pa. 422, *Price v. New Castle Refractories Co.*, 332 Pa. 507, *Rebel v. Standard Mfg. Co.*, 340 Pa. 313—are not in point. Each of these cases arose under the Factory Act of May 2, 1905, P. L.

352, which expressly provides, in section 11, that "Exhaust fans of sufficient power, or other sufficient devices, shall be provided for the purpose of carrying off . . . dust from emery-wheels, grind-stones and other machinery creating dust . . ." Here the applicable statute is the Anthracite Mining Act of June 2, 1891, P. L. 176. Nowhere in that act is there any provision imposing on mine owners an absolute duty to eliminate or sweep away the dust incident to the mining operations, and there is no mention of dust except in Rule 23 of Article XII, relating solely to the removal of dust from coal breakers. Nor may such duty be held to arise by implication from the language of Article X, section 4, which provides that "The ventilating currents shall . . . dilute, render harmless and sweep away smoke and noxious gases . . .", or from the general language of Article XII, Rule 1, that "The owner . . . shall use every precaution to ensure the safety of the workmen in all cases, whether provided for in this act or not . . ." "Statutory duties do not arise by implication but must be imposed by express legislative authority. When the legislature takes a step in advance of the common law and imposes additional burdens upon an employer in order to meet the necessities of modern industrial growth, the new duties thus imposed should be so clearly set forth as to leave no doubt as to the legislative intention. *There should be no such thing as a doubtful statutory duty*": *Reeder v. Lehigh Valley Coal Co.*, 231 Pa. 563, 569.

The reason for the variant provisions of the Factory Act on the one hand and the Mining Act on the other is obvious. Both the Factory Act and Mining Act were intended to deal realistically with the conditions found respectively in factories and mines. In factories and other working places on the surface of the earth "dust control" is, in most instances, a relatively simple matter, while in a mine, several hundred feet under the ground, the presence of dust, even in large quantities

at times, cannot be avoided by any device now known. This was recognized by the framers of the Mining Act, as evidenced by the provision in Article XII, Rule 23, that "In all coal breakers where the coal dust is so dense as to be injurious to the health of persons employed therein, the owner, operator or superintendent of said breaker shall, upon the request of the inspector, immediately adopt measures for the removal of the dust, *as far as practicable.*" This provision is entirely omitted in Article X, even with the qualification "as far as practicable." In addition to the general provisions already referred to, the Mining Act does provide, specifically, in Article X, section 3, that "The minimum quantity of air . . . shall not be less than two hundred (200) cubic feet per minute for each and every person employed in any mine . . ." Violations of this section by defendant were alleged but none were proved. The official records kept by defendant, as required by Article X, section 16, and unimpeached by plaintiff, show there was at all times more than twice the required minimum amount of air at the place where plaintiff worked. These records are the best evidence available of the amount of air in circulation and they conclusively establish that the defendant did provide and maintain a constant and adequate supply of pure air as provided in Article X of the Mining Act.

Notwithstanding the absence of a statutory duty, we do not mean to say that no duty whatever rested upon defendant with respect to elimination or amelioration of dust in its mine. The test of liability, however, is not that of failure to perform a statutory duty, but failure to furnish a safe place to work as measured by the standards imposed by the common law. In the case of *Pauza v. Lehigh Valley Coal Co.*, 231 Pa. 577, the common law doctrine is well stated as follows (p. 580): "The employer is bound to furnish machinery and appliances reasonably safe for the use intended. Reasonable safety within the meaning of the law means that the

machinery and appliances furnished must be of the usual and ordinary kind adopted by those in the same kind of business. An employer is not even bound to provide the safest machinery or the newest and most approved appliances. He has performed his duty in this respect when he furnishes those of the ordinary character in general use in the business in which he is engaged." See also *Titus v. Railroad Co.*, 136 Pa. 618, 626; *Ford v. Anderson*, 139 Pa. 261, 263; *Kehler v. Schwenk*, 144 Pa. 348, 357; *Keenan v. Waters*, 181 Pa. 247, 250; *Venzel v. Valley Camp Coal Co.*, 304 Pa. 583, 589; *Fox v. Keystone Telephone Co.*, 326 Pa. 420, 427. "It is always important to keep in mind in this class of cases that the test of liability is not danger but negligence, and negligence is never imputed from the employment of methods or machinery in general use in the business": *Reeder v. Lehigh Valley Coal Co.*, supra, 570. In the present case the only evidence on the subject is that the methods and equipment of defendant were of the usual and ordinary character in general use throughout the anthracite mining industry. The court below so recognized when it made the statements, acquiesced in by plaintiff, that "defendant's evidence was not successfully denied . . . The defendant used all the customary practices that are general in the anthracite mining region, as was shown by the mine foreman in charge throughout the time and the evidence of other mining engineers and coal operators." There was, therefore, no question of breach of defendant's duty to furnish a reasonably safe place to work to submit to the jury, for there was no such breach shown.

In view of our conclusion that no failure of duty on the part of defendant has been proved, the availability in this case of the defense of contributory negligence or that of voluntary assumption of risk becomes immaterial. To make out a prima facie case the burden rested with plaintiff to produce evidence which, if believed, would warrant a finding that his injury resulted from a

failure of defendant to perform a duty imposed by statute or by the general usages of the mining industry. This burden he did not meet and hence the defendant is entitled to judgment in its favor on the whole record.

The order of the court below is reversed and judgment is here entered for the defendant on the whole record.