11 N.J. Super. 445 (1951)
78 A.2d 411
GAETANO CANONICO, PLAINTIFF-APPELLANT,
v.
CELANESE CORPORATION OF AMERICA, PLASTICS DIVISION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1951.
Decided January 24, 1951.
*447 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Joseph Coult argued the cause for the plaintiff-appellant (Mr. Elias G. Willman, attorney).
Mr. Fredrick J. Waltzinger argued the cause for the defendant-respondent (Mr. Edwin J. O'Brien, of counsel).
The opinion of the court was delivered by EASTWOOD, J.A.D.
The plaintiff, Gaetano Canonico, appeals from the judgment of dismissal entered against him by the Hudson County Court at the conclusion of his case. Mr. Canonico sought to recover damages allegedly suffered by the inhalation of non-toxic cellulose acetate dust during his employment at the defendant's place of business.
The plaintiff's proofs are substantially as follows: He worked in the pulverizing department in defendant's manufacturing plant, No. 290 Ferry Street, Newark, New Jersey, from 1940 until February, 1949. The building in question is three stories in height, on the first floor of which there was *448 a hopper for each of two pulverizers, in the basement a grinder and on the third floor several rotex machines or screens, two for one pulverizer and four for the other. The cellulose acetate material was dumped into the hopper, it then descended to the basement where it was ground, after which it was taken by an elevator from the basement to the rotex machines on the top floor. It then went through a chute into bags to the hopper floor and the coarser particles which did not pass through the screens or rotex machines were returned to be ground over again. The operation was unquestionably a very dusty one. The only ventilation were windows on the one side of the building which were closed in the winter. There were no blowers or fans and at times there was one and one-half inches of dust on the floor and 400 pounds of dust, more or less, would be swept from the floor in one day. The pulverizing room was swept frequently and a large vacuum cleaner was used in addition to the mechanical sweeping. According to the plaintiff, the dust "went all over him, his skin, face, nose, throat." There was supporting testimony of a fellow employee "that he could not see through the dust in the room." When the rotex screens were cleaned with an air hose, it caused the dust to go all over; Canonico and others "who worked on this floor had to take a shower every night to clean themselves" and one of the workmen "used an air hose to shoot the dust off him before he took a bath;" masks were provided by the employer but "could not be used because they had to be cleaned every three minutes and the workmen did not have time;" at the time he started in the pulverizing room, plaintiff did not use a mask; around the beginning of 1948, he used a mask for two or three minutes and found it full of powder inside and could not, therefore, use it any more; he was never informed by anyone about the use of the mask nor what might happen to him if he did not use it. Samples of the dust taken from the pulverizing room contained particles of ten microns or less and particles of that size represented 75% of the dust sample. When plaintiff began his employment in the pulverizing room he stated his health was good; that in November, 1948, he first felt the *449 effects of the inhalation of the dust and sought medical aid in January, 1949; that he has not regained his health since and is suffering from a pulmonary congestion due to bronchitis and bronchiectasis involving the lower lobes of the lung, and a chronic pleuritis, causing a paralysis of the left diaphragm. Dr. Crecca, an expert in diseases and surgery of the chest, testified that it was his opinion that there was a causal relation between the employment and the plaintiff's disease, known as pneumoconiosis, although he admitted that cellulose acetate dust is an inert organic dust and that he had never previously known or treated anyone who had suffered specifically from the inhalation of cellulose acetate dust.
At the conclusion of the plaintiff's case, on defendant's motion, the court directed that judgment be entered for the defendant "on the ground that clearly the plaintiff has failed to sustain his burden of establishing that the defendant was negligent and that that negligence was the proximate cause of the condition it has been testified the plaintiff suffers from."
Plaintiff contends that (1) his proofs presented a prima facie case of liability and, therefore, the court erred in entering judgment for the defendant; and (2) the court erred in refusing to permit the witness, Shelanski, to "give his opinion with respect to industrial hazards."
The posture of the proof at the end of the plaintiff's case was that while the conditions under which the plaintiff worked were very dusty, there was no proof that the defendant had failed to conform to the standard that had been adopted and was in use in the conduct of similar businesses. In fact, the plaintiff did not offer proof of any standard for the elimination of the dusty conditions experienced at his place of employment or that the defendant had failed to provide necessary ventilation or proper methods for the removal of the dust. On the contrary, the proofs established that cellulose acetate dust is non-toxic and that previously, although the operation had been in effect for many years, no other employee had been known to suffer the ill effects claimed by plaintiff. Dr. Crecca, plaintiff's medical expert, residing and practicing many years in the community where the defendant's plant *450 is located, admitted that he had never previously had any case where illness or disease had been attributable to the inhalation of cellulose acetate dust; that there were a number of other causes that might equally produce the condition from which he found the plaintiff was suffering.
We recognize the fact that there have been many cases where an inexperienced employee has recovered against a master for diseases due to poisoning or infection, where the employer knew that the work assigned to the employee contained such risks, failed to warn him of their existence and to instruct him as to the precautions necessary to avoid them, but we do not find any case where an action has been successfully maintained for disease, whether of sudden or slow infection, except where the employer had a knowledge of the risk superior to that which the servant had, or might reasonably be expected to have; and that either the knowledge of the servant, or the obvious character of the danger and the means necessary to avoid or minimize it, or, on the other hand, the master's ignorance that there was a reasonable probability or danger of such poisoning or infection, would negative a right of action at common law. On the other hand, the defendant is liable for legal damage caused by disease where he is guilty of wrongful action toward one standing in no voluntary relation to him, consisting in an omission to perform a duty imposed on him by such a relation. We find in the books cases involving the incurrence of diseases following a neglect of duty on the part of gas companies, druggists, and purveyors and manufacturers of food, which are said clearly to show that the common law recognizes a right to health, the violation of which by positive action between strangers is a legal wrong. But, with respect to actions for occupational diseases not provided for by statute, an examination of the decisions discloses a decided conflict. On the one hand, there are many statements, often pure dicta, that no action lies at common law for damages for an occupational disease, and this view has been crystallized by some decisions to the same effect, such as that in McCreery v. Libby-Owens-Ford Glass Co., 363 Ill. 321, 2 N.E.2d 290, 105 A.L.R. 75 (Ill. Sup. Ct. 1936). In fact, some of these *451 statements and decisions seem broad enough to exclude any recovery of damages in an action at law for an occupational disease, even where there has been some negligence on the part of the employer, such as might be found in his failing to provide a safe place in which to work, or even in an alleged failure on his part to warn the servant of the dangers involved, although the employer possessed, or was in a position to be charged with, greater knowledge of the danger than the servant had. 105 A.L.R., pp. 83-86, and cases cited therein.
The plaintiff conceded at the argument of this appeal that although he had made a careful research, he had not been able to discover any case involving the contraction of disease from the inhalation of cellulose acetate dust or other non-toxic dust. He cites only three cases in support of his contentions, viz.: Bd. of Health of Weehawken Tp. v. N.Y. Central R. Co., 4 N.J. 293 (1950); Davis v. New Jersey Zinc Co., 116 N.J.L. 103 (E. & A. 1936); Rosacci v. U.S. Pipe & Foundry Co., 123 N.J.L. 357 (E. & A. 1939). We do not find these cases analogous. The Weehawken case deals with a conviction for violation of an ordinance of the Township of Weehawken denouncing as a public nuisance the emission within the municipality of smoke of proscribed density. The Davis case was an action based on illness caused by the inhalation of manganese poison and the judgment for plaintiff was affirmed because there was evidence which indicated that the appellant was charged with knowledge of the dangers inherent in its manufacturing process and was neglectful in not making reasonable provision to protect plaintiff from the dangerous condition which it had reason to believe existed. In the Rosacci case, which dealt with a disease contracted by the inhalation of deleterious dust, the court in affirming judgment for the plaintiff held that death from silicosis caused by dust-laden air in a place of work is a well recognized fact and that proof of the failure to make any reasonable protection for the workmen in such dangerous places and the failure to exercise any care whatever to eliminate the danger so far as practicable, presented a question for the jury's determination.
In considering the question as to whether an occupational *452 disease may be caused by the inhalation of cellulose acetate or other non-toxic dust, the case sub judice is one of novel impression, and our search for analogous cases has been somewhat fruitless. To demonstrate the conflicting views of our sister states, we refer to the cases of McCreery v. Libbey-Owens-Ford Glass Co., supra; Prattico v. Hudson Coal Co., 347 Pa. 490, 32 A.2d 733 (Sup. Ct. 1943); Brown v. Tennessee Consol. Coal Co., 19 Tenn. App. 123, 83 S.W.2d 568 (1935). The McCreery case was an action brought by an employee wherein he sought to recover damages for an occupational disease known as pneumoconiosis, caused by the inhalation of dust produced in various processes of manufacture of glass and similar products. In the McCreery case, as here, the plaintiff charged the defendant negligently failed to provide plaintiff with a reasonably safe place in which to work, in that there were no proper suction fans or reasonable apparatus installed; there were no masks or respirators provided; that defendant failed to warn plaintiff of the danger of contracting the occupational disease and negligently ordered plaintiff to work despite the danger to which he was exposed. The court in the McCreery case held that an employee has no common law right to recover damages against his employer for an occupational disease contracted as a result of his employment. This rather straight-laced position is the rule of law in several other states as indicated by the numerous citations appearing in 105 A.L.R., pp. 84-86. In the Prattico case, the employee brought an action against his employer for disease contracted from inhaling dust in a coal mine where he had been employed for eight years, admitting that he knew coal mining makes dust and his proofs merely showed that his place of employment became "so dust-laden that `intermittently  at times' visibility to see another person was only three feet," and contending that the defendant had a duty to insure the plaintiff a safe place to work and that his admitted physical condition is a conclusive answer that he was not furnished a safe place to work. The employer's motion for judgment before the trial court was denied and this action was reversed on appeal by the Supreme Court which held:
*453 "Notwithstanding the absence of a statutory duty, we do not mean to say that no duty whatever rested upon defendant with respect to elimination or amelioration of dust in its mine. The test of liability, however, is not that of failure to perform a statutory duty, but failure to furnish a safe place to work as measured by the standards imposed by the common law. In the case of Pauza v. Lehigh Valley Coal Co., 231 Pa. 577, at page 580, 80 A. 1126, at page 1127, the common law doctrine is well stated as follows: `The employer is bound to furnish machinery and appliances reasonably safe for the use intended. Reasonable safety within the meaning of the law means that the machinery and appliances furnished must be of the usual and ordinary kind adopted by those in the same kind of business. An employer is not even bound to provide the safest machinery or the newest and most approved appliances. He has performed his duty in this respect when he furnishes those of the ordinary character in general use in the business in which he is engaged.' See, also, Titus v. Bradford, B. & K. Railroad Co., 136 Pa. 618, 626, 20 A. 517, 20 Am. St. Rep. 944; Ford v. Anderson, 139 Pa. 261, 263, 21 A. 18; Kehler v. Schwenk, 144 Pa. 348, 357, 22 A. 910, 13 L.R.A. 374, 27 Am. St. Rep. 633; Keenan v. Waters, 181 Pa. 247, 250, 37 A. 342; Venzel v. Valley Camp Coal Co., 304 Pa. 583, 589, 156 A. 240; Fox v. Keystone Telephone Co., 326 Pa. 420, 427, 192 A. 116, 110 A.L.R. 1182. `It is always important to keep in mind in this class of cases that the test of liability is not danger but negligence, and negligence is never imputed from the employment of methods or machinery in general use in the business.' Reeder v. Lehigh Coal Co., supra, 231 Pa. at page 570, 80 A. at page 1124. In the present case the only evidence on the subject is that the methods and equipment of defendant were of the usual and ordinary character in general use throughout the anthracite mining industry. The court below so recognized when it made the statements, acquiesced in by plaintiff, that `defendant's evidence was not successfully denied * * *. The defendant used all the customary practices that are general in the anthracite mining region, as was shown by the mine foreman in charge throughout the time and the evidence of other mining engineers and coal operators.' There was, therefore, no question of breach of defendant's duty to furnish a reasonably safe place to work to submit to the jury, for there was no such breach shown."
In the Brown case, an action for damages for silicosis, the court said that if there had been proof that the inhalation of ordinary river sand, not pulverized, might cause the disease, the failure of the employer to warn the plaintiff employee of that fact might have been negligence, notwithstanding the employer's lack of knowledge thereof, as an obligation rests upon an employer to acquaint his employee with the dangers which can be ascertained by a knowledge of the scientific *454 principles governing the substances and processes used in the employment, and to which, in his ignorance, the employee will otherwise be subject; but that in the state of the record there was no material evidence upon which a verdict for the plaintiff could be predicated.
The applicable law in this State is settled. Under the contract of employment, it becomes the master's duty to use reasonable care to provide a proper and safe place in which the servant may work and to provide suitable tools and implements with which to perform his work, and for failure to use reasonable diligence to protect him from unnecessary risks and from negligence or want of care, the employer will be answerable for all the damages which may ensue. McDonald v. Standard Oil Co., 69 N.J.L. 445 (E. & A. 1903). The employee assumes the risks ordinarily incident to his employment as well as those dangers which are plain and obvious to one of ordinary skill and understanding, but not those dangers known or reasonably foreseen by the employer and unknown to the employee, nor latent dangers of which he has not been forewarned by his employer. Van Steenburgh v. Thornton, 58 N.J.L. 160 (E. & A. 1895); McDonald v. Standard Oil Co., supra; Zebrowski v. Warner Sugar Co., 83 N.J.L. 558 (E. & A. 1912); Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. & A. 1948). Inherent in the rule as to the duty of the employer to warn is the limitation that a master is not bound to warn his servant of the danger of contracting an occupational disease, unless he is in a position to have greater knowledge than the servant of the existence of that danger. The responsibility of a master to instruct a servant as to the dangers of his employment arises only when the servant is himself ignorant thereof and the master knows the fact which the servant ought to know. Tompkins v. Machine Co., 70 N.J.L. 330 (E. & A. 1904). There was no proof here that the defendant had any knowledge whatever of any latent or other danger from the inhalation of the cellulose acetate dust; or that the employer had failed to investigate the probability of any such danger and to reasonably protect his employee. In fact, the proofs are that the dust was non-toxic and not *455 dangerous per se. The employer is not liable for his employees' injuries if he furnishes a place of employment and appliances of a kind in general use and conducts his business in a manner conforming to the established standards of those engaged in the specific business. Rakowski v. Raybestos-Manhattan, Inc., 5 N.J. Super. 203 (App. Div. 1949). The employer is not required to furnish the safest and finest place of employment but it must be reasonably safe and conform to the established standards in general use by those engaged in the same industry. Tompkins v. Machine Co., supra; Marsh v. Chickering, 101 N.Y. 396. The employee must establish proof of departure by the employer from the established standards. Zebrowski v. Warner Sugar Co., supra; Augerstein v. Jones & Laughlin, Ltd., 139 Pa. 183, 21 A. 24 (Sup. Ct. 1891). The mere proof that the operations were very dusty is not sufficient to establish actionable negligence against the defendant. Pennsylvania Pulverizing Co. v. Butler, 61 Fed.2d 311 (Cir. Ct. of App., 3rd Cir., 1932). In this class of cases the test of liability is not danger, but negligence, and negligence is never imputed from the employment and methods in use or tools and machinery furnished in the operation of the business. There must be affirmative proof of such negligence. There is no question here of a breach of defendant's duty to furnish a reasonably safe place to work to submit to the jury, as there was no such breach shown. In other words, the plaintiff failed to prove the actionable negligence charged and the court's judgment of dismissal was, therefore, proper. Huels v. General Electric Co., 134 N.J.L. 165 (Sup. Ct. 1946).
We find no merit in plaintiff's second ground of appeal, viz.: that the court erred in excluding the testimony of the expert witness Shelanski. Where, as here, the question as to whether a witness has such special knowledge or experience as to justify him to give opinion evidence, is one for the discretion of the trial court, his decision is conclusive unless clearly shown to be erroneous in matter of law. Chmiel v. Yatsko, 124 N.J.L. 508 (Sup. Ct. 1940). See also Cowdrick v. Pennsylvania R.R. Co., 132 N.J.L. 131 (E. & A. *456 1944); Wisniewski v. Weinstock, 130 N.J.L. 58 (Sup. Ct. 1943); affirmed on Supreme Court's opinion, 135 N.J.L. 202 (E. & A. 1947). From our examination of the record we cannot conclude that the court improperly exercised its discretion in excluding Mr. Shelanski's testimony.
The judgment of the trial court is affirmed, with costs.